Linda LEO

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.**

Civ. A. No. 95–2953.

United States District Court,
E.D. Pennsylvania.

Oct. 17, 1995.

Paul Mark Perlstein, Dranoff–Perlstein Associates, Philadelphia, PA, for Plaintiff.

Earl T. Britt, Britt, Hankins, Schaible & Moughan, Philadelphia, PA, for Defendant.

## *MEMORANDUM*

LOUIS H. POLLAK, District Judge.

This action, which derives from a dispute over insurance coverage, was originally brought by the plaintiff, Linda Leo, a resident of Pittsburgh, Pennsylvania, in the Court of Common Pleas of Philadelphia County. The defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), an Illinois corporation with its principal place of business in Illinois, filed a timely notice of removal based upon this court's diversity jurisdiction. State Farm has now moved to dismiss portions of the complaint, asserting that they fail to state a claim upon which relief can be granted under Pennsylvania law. For the reasons discussed below, this motion will be granted in part and denied in part.

### I. *Background.*

As is usual in ruling on a motion to dismiss, the following account of the facts of this case assumes the accuracy of the allegations set forth by Leo in her complaint. On July

---

15, 1992, Linda Leo and her husband were involved in an automobile accident with another car. The accident left Leo with a disorder called "left tarsal syndrome," as a result of which she had to have surgery.[1] Despite the surgery, Leo's ankle was permanently injured, causing her pain and limiting her mobility. Leo incurred some $17,147.99 in medical expenses and lost $11,233.75 in wages; because she had only $14,000 in medical and wage loss benefits, this left her with $14,381.74 in uncompensated losses. State Farm was the insurer of the other driver, and paid Leo its policy limit, which was $50,000.

Leo and her husband also had three insurance policies from State Farm, however, which provided a total of $75,000 in underinsured motorist coverage. Accordingly, Leo then, through her attorney, sought to recover from State Farm in its capacity as her insurer, asserting that the other motorist had been underinsured. Leo's suit before this court is based upon the difficulties that she allegedly encountered in securing a settlement of that claim from State Farm. Briefly, Leo's efforts to settle her claim began on December 13, 1993, when her counsel forwarded a range of information on Leo's claim to State Farm. They ended in February 1995, when State Farm paid a $75,000 arbitration award to Leo. According to Leo, State Farm's first offer of settlement, in the amount of $25,000, was made on February 10, 1995, on the morning of the arbitration hearing in the case. In the intervening fourteen months, State Farm declined to make any offer to settle the case and allegedly delayed the handling of Leo's claim in a variety of ways, including requiring an independent medical evaluation of Leo and requiring Leo to make a statement under oath about her claim. State Farm also declined to pay interest, attorney's fees or costs for the arbitration award.

Leo's complaint makes claims that are divided into five counts:

Count I asserts that State Farm's conduct was in bad faith, in violation both of the insurance policy's implied covenant of good faith and fair dealing and of 42 Pa.C.S.A. Section 8371. Complaint, ¶ 29.

Count II asserts that State Farm's conduct "constitutes unfair or deceptive acts or practices prohibited by the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. Section 201, et seq., and the Unfair Insurance Practices Act, 40 P.S. Section 1171.1 et seq., and the Unfair Claims Settlement Practices regulations, 31 Pa.Code Section 146, et seq." Complaint, ¶ 33. (This count also enumerates six asserted violations of the Unfair Insurance Practices Act.)

Count III asserts that State Farm's conduct constitutes "misrepresentation, fraud and deceit" in that State Farm "knowingly, willfully and/or recklessly misrepresented to Plaintiffs the nature and extent, terms, conditions, and duration of the coverage for which plaintiffs were paying premiums," in violation of obligations imposed by "the policy's implied covenant of good faith and fair dealing, the statutes of the Commonwealth of Pennsylvania, and the regulations of the Insurance Department of the Commonwealth of Pennsylvania." Complaint, ¶ 36.

Count IV asserts that State Farm has violated its obligation to negotiate in good faith towards a fair settlement, in violation of "fiduciary, contractual and statutory obligations". Complaint, ¶ 41.

Count V asserts that "an implied covenant of the subject policy of insurance is the insurer's promise to indemnify the insured promptly," Complaint, ¶ 43 (emphasis omitted), and that State Farm failed to do so, and also failed to notify Leo of its reasons for its delay, in violation of its contract with Leo and of Pennsylvania law.

State Farm's motion to dismiss asserts that Count II attempts to assert a claim under Pennsylvania's Unfair Insurance Practices Act (UIPA), and that, because Pennsylvania law does not permit courts to enforce the UIPA either directly or indirectly, this claim must be dismissed. State Farm's mo-

---

1. "Tarsal" is defined in the dictionary as meaning "of or related to the ankle," shedding some

light upon the nature of Leo's injury.

tion to dismiss also argues that Counts IV and V seek to assert a common-law claim based upon State Farm's alleged bad-faith conduct, and that the Pennsylvania courts have not permitted such claims on the facts that Leo alleges.

## II. Leo's Claims under the Unfair Insurance Practices Act.

■ Leo and State Farm are in agreement that only the Pennsylvania Insurance Commissioner may enforce the UIPA directly. *See Hardy v. Pennock Insurance Agency, Inc.*, 365 Pa.Super. 206, 529 A.2d 471, 478 (1987). The UIPA is not, however, an exclusive remedy for claims of insurer misconduct; such claims may be brought under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Consumer Protection Law"), which creates a private right of action.[2] *See Pekular v. Eich*, 355 Pa.Super. 276, 513 A.2d 427, 433 (1986) (finding that the UIPA does not bar claims under the Consumer Protection Act). The parties disagree as to whether a plaintiff can invoke UIPA standards in establishing a violation of the Consumer Protection Act.

The Pennsylvania courts have found that a violation of the UIPA does not establish a *per se* violation of the Consumer Protection Law. *See Gordon v. Pennsylvania Blue Shield*, 378 Pa.Super. 256, 548 A.2d 600, 602–03 (1988). Leo argues, however, that a court may take the UIPA into account in interpreting ambiguous provisions of the Consumer Protection Act. No Pennsylvania court appears to have decided this question. One Pennsylvania court has, however, used the

UIPA as an aid to statutory interpretation in construing a different statute, 42 Pa.Cons. Stat.Ann. § 8371, which creates a statutory remedy for "bad faith" conduct by insurers. *See Romano v. Nationwide Mutual Fire Insurance Co.*, 435 Pa.Super. 545, 646 A.2d 1228, 1232–33 (1994). *Romano* found that, given that the precise meaning of the statutory term "bad faith" was unclear, it was appropriate for the court to look to the UIPA to clarify that term's meaning. *See id.*[3] Leo argues that a court may similarly consider the standards of the UIPA in interpreting ambiguous provisions of the Consumer Protection Act. This court agrees. Based upon *Romano*, the court finds that the courts of Pennsylvania, were they presented with this question, would permit the use of the UIPA in the limited fashion that Leo proposes.

State Farm asserts that a case decided by my colleague Judge Joyner, *Parasco v. Pacific Indemnity Co.*, 870 F.Supp. 644, 647 (E.D.Pa.1994), prohibits reference to UIPA standards in this fashion. *Parasco*, however, involved a claim somewhat different from that in this case. In *Parasco*, Judge Joyner found that a plaintiff could not invoke UIPA standards in making a claim under the Consumer Protection Act; however, he noted specifically that the plaintiffs did not "argue that resort to the UIPA is warranted because of an ambiguity in the Consumer Protection Act." *Id. Parasco*, therefore, springs from *Gordon*'s holding that a plaintiff may not claim that a violation of the UIPA is a *per se* violation of the Consumer

---

2. The Act provides:

Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act, or practice declared unlawful by section 3 of this act, may bring a private action, to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper.

73 Pa.Stat. § 201–9.2(a). Section 3 of the Act, which is codified at 73. Pa.Stat. § 201–3, pro-

vides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xvii) of clause (4) of section 2 of this act and regulations promulgated under section 3.1 of this act are hereby declared unlawful."

3. As authority for this proposition, the *Romano* court cited 1 Pa.C.S.A. § 1921, which provides that "when the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters ... (5) ... other statutes upon the same or similar subjects." This statute would also appear to apply to the present case.

Protection Act, and is not relevant to the case at bar.

Because Leo's complaint does not cite any specific section or sections of the Consumer Protection Act as forming the basis of its claim under that statute, it is difficult for the court to determine precisely which (if any) ambiguities Leo seeks to resolve by reference to the UIPA. The relevant provision of the Act, 73 Pa.Stat. § 201–2(4)(i)–(xvii), lists some seventeen types of conduct that are actionable as "unfair methods of competition" or as "unfair and deceptive trade practices." A brief review of the Act reveals two sections on which Leo may intend to rely. One is the Act's provision on misrepresentation, which states in relevant part that "representing that goods or services have … characteristics … that they do not have" is a violation of the Act. 73 Pa.Stat. § 201–2(4)(v). Leo's claims would appear to be within this section, if they are read as assertions that State Farm's insistence on sworn statements and medical examinations amounted to a representation to her that her claim was of little value. Alternately, it is possible that Leo could intend to invoke the Act's residual clause, which refers to "[e]ngaging in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding." Leo will, at a later stage of this case, be required to identify the ambiguities in the Consumer Protection Act that would justify reference to the UIPA. For the present, however, the citation to the UIPA in Leo's complaint will be allowed to stand to the extent that it invokes the UIPA as an aid to the interpretation of the Consumer Protection Act.

III. *Leo's Common–Law Bad Faith Claims.*

■ Home Insurance's motion to dismiss also challenges those aspects of Leo's complaint that seek to assert a distinct common-law claim based on bad-faith conduct. The Pennsylvania Supreme Court found, in *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.*, 494 Pa. 501, 431 A.2d 966, 970 (1981), that there was no distinct common-law cause of action predicated upon bad faith conduct by an insurer. *See also Kramer v. State Farm Fire & Casu-*

*alty Insurance Co.*, 412 Pa.Super. 227, 603 A.2d 192, 194 (1992) (following this holding, but noting that common-law actions for fraud and deceit would still be available). In a footnote, however, the *D'Ambrosio* Court noted that damages for emotional distress may be recoverable in contract in cases in which, for example, " 'the breach is of such a kind that serious emotional disturbance was a particularly likely result.' " *D'Ambrosio*, 431 A.2d at 970 n. 5 (quoting Restatement (Second) of Contracts § 367 (Tent.Draft No. 14, March 1, 1979), now Restatement (Second) of Contracts § 353). Leo asserts that this footnote permits her to make a common-law bad-faith claim.

This court is not aware of any instance in which the courts of Pennsylvania have upheld a claim made under this theory. Indeed, one court, in declining to do so, found that the Pennsylvania Supreme Court's narrow reading of section 353 of the Restatement (Second) of Contracts would suggest that "circumstances must indeed be compelling" in order to permit any such claim. *See Rodgers v. Nationwide Mutual Insurance Co.*, 344 Pa.Super. 311, 496 A.2d 811, 816 (1985) (citing *Mason v. Western Pennsylvania Hospital*, 499 Pa. 484, 453 A.2d 974, 980 (1982)).

It remains possible that bad-faith failure to pay an insurance claim might meet the standard of section 353 in some circumstances. For instance, if an insured's ability to secure the basic necessities of life were foreseeably very likely to hinge upon receiving a payment under an insurance contract, "serious emotional disturbance" might well be a "particularly likely result" of failure to pay a claim. *Cf. Brooks v. Hickman*, 570 F.Supp. 619, 620 (W.D.Pa.1983) (implying that section 353 of the Restatement (Second) of Contracts might permit recovery of damages for mental distress when "personal bankruptcy or impoverishment" was at risk). In the present case, however, before the plaintiff's difficulties in collecting on her insurance policy began, she received a payment of $50,000 from the defendant under the insurance policy of the other motorist. This amount was considerably in excess of the amount of uncompensated wage losses and medical bills she alleges, $14,381.74. Because it appears that no

immediate financial crisis was foreseeable as a result of State Farm's alleged conduct, Leo cannot sustain a claim under *D'Ambrosio*'s footnote 5.

Accordingly, I find that to the extent that Counts IV and V of the complaint seek to assert common-law claims of bad faith by State Farm, those claims should be dismissed. Counts IV and V may stand to the extent that they seek to assert other claims, such as common-law claims of fraud or deceit.