ORDER
 

 LOUIS H. POLLAK, District Judge.
 

 AND NOW, this 9th day of September, 1996, after consideration of the defendant State Farm’s motion for summary judgment, the response thereto and after review of the Report and Recommendation of Diane M. Welsh, United States Magistrate Judge, it is hereby ORDERED that:
 

 1. The Report and Recommendation is APPROVED and ADOPTED;
 

 2. Defendant State Farm’s motion for summary judgment (Document No. 22) is GRANTED with respect to all counts of the complaint.
 

 REPORT AND RECOMMENDATION
 

 WELSH, United States Magistrate Judge.
 

 This is a five count diversity action the plaintiff has filed against her insurer, State Farm Mutual Automobile Insurance Company (“State Farm”). All of the plaintiffs claims arise out of the manner in which State Farm processed her claim for underinsured motorist benefits. Count I is a claim for bad faith. Count II is a claim under Pennsylvania’s Consumer Protection Law. Counts III-V are for common law fraud and breach of contract. State Farm has filed a motion for summary judgment with respect to all counts'of the complaint.
 

 I. Summary Judgment Standard
 

 Summary judgment is appropriate if “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Federal Rule of Civil Procedure 56(c). An issue of fact is genuine only if there is sufficient evidence to permit a reasonable fact finder to return a verdict for the non-moving party.
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). An issue of fact is material only if it might affect the outcome of the suit under the governing law.
 
 Id.
 
 at 248, 106 S.Ct. at 2510. Credibility determinations are not appropriately made by a judge in summary judgment but must be left for the fact finder.
 
 Id.
 
 at 255, 106 S.Ct. at 2513-14.
 

 The moving party bears the initial burden of identifying for the court the basis for its motion and identifying the portions of the record it believes demonstrate the absence of a genuine issue of material fact.
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). Once the moving party has done this, the non-moving party must produce evidence such that a reasonable fact finder could find for that party, in order to avoid the entry of
 
 *1188
 
 summary judgment against it.
 
 Anderson,
 
 477 U.S. at 248-49, 106 S.Ct. at 2510-11. Where the moving party has met its initial burden, the non-moving party must respond with specific factual allegations or with other specific evidence demonstrating that there is a genuine issue for trial.
 
 See Lujan v. National Wildlife Federation,
 
 497 U.S. 871, 888-89, 110 S.Ct. 3177, 3188-89, 111 L.Ed.2d 695 (1990). Conclusory factual allegations will not suffice.
 
 Id.
 
 Finally, when considering how a reasonable fact finder would rule, the court should apply the evidentiary standard that the fact finder would use at trial.
 
 Anderson,
 
 477 U.S. at 252, 106 S.Ct. at 2512.
 

 II. Facts
 

 The following constitute the facts about which there is no dispute. On July 15,1992, the plaintiff was involved in an auto accident with Vasco Da Conceicao. Mr. Da Conceicao was insured under an automobile insurance policy issued by State Farm. The accident left the plaintiff with tarsal tunnel syndrome in her left anide, as a result of which she required surgery. Despite the surgery, the plaintiffs ankle was permanently injured, causing pain and limiting her mobility. She incurred $17,147.99 in medical expenses and lost $11,233.75 in wages. She had $14,000 in medical and wage loss benefits, leaving her with $14,381.74 in uncompensated losses.
 

 Attorney Paul Mark Perlstein represented the plaintiff with respect to this accident. Arlene McGonagle was the State Farm adjuster assigned to the plaintiffs claim against Mr. Da Conceicao. She determined that Mr. Da Conceicao was completely at fault for the accident and she valued the plaintiffs claim at $50,000 to $85,000. Deposition of Arlene McGonagle at 8, 19.
 
 [1]
 
 On October 28, 1993, State Farm tendered the plaintiff $50,000, which was Mr. Da Conceicao’s policy limit.
 

 The plaintiff and her husband also had three insurance policies from State Farm which provided a total of $75,000 in available underinsured motorist (“UIM”) coverage. The plaintiff, through her attorney, sought to recover from State Farm in its capacity as her insurer, on the ground that Mr. Da Conceicao had been underinsured.
 

 On December 8, 1993, State Farm asked attorney Perlstein to provide medical and other information regarding the accident and the extent of the plaintiffs injuries. Attorney Perlstein did so and demanded $75,000 on December 13, 1993. State Farm did not make an offer. Instead, it requested an independent medical examination (“IME”), which was scheduled for May 18, 1994. By letter dated April 26, 1994, the plaintiff was advised that it was her responsibility to obtain and bring to the appointment any “X-rays films, CT scans, MRI’s etc.” She was cautioned that “failure to bring these films could result in the cancellation of th[e] appointment.” The plaintiff appeared for the examination but the doctor did not perform the IME on that date because the plaintiff did not bring all of her X-rays to the examination.
 

 In a letter dated May 18, 1994, attorney Perlstein wrote to L. Scott Whiteside, the State Farm adjuster assigned to the plaintiffs UIM claim, to complain about the doctor’s refusal to perform the IME. Attorney Perlstein wrote “it is obvious that State Farm is acting in bad faith by stonewalling” and he demanded arbitration. Pursuant to the plaintiffs policy, attorney Perlstein named an arbitrator for the panel.
 

 On May 26, 1994, John A. Luehsinger, an attorney for State Farm, requested that the plaintiff submit to a statement under oath. On June 20, 1994, the plaintiff again submitted herself for a medical examination. Dr. Charles S. Stone did examine her on that date. State Farm received Dr. Stone’s report on or about July 12, 1994. Attorney Perlstein requested a copy of the report on August 17, 1994 and received a copy on August 19, 1994. The report stated that the plaintiffs “subjective symptoms were consistent with the objective findings.” The report also stated that the plaintiffs symptoms were related to her accident on July 15,1992, were
 
 *1189
 
 related to tarsal tunnel syndrome and that her care to date was appropriate;
 

 On August 19, 1994, attorney Perlstein again demanded the policy limit of $75,000. State Farm did not make any offer. Instead, by letter dated September 1, 1994, attorney Luchsinger reminded attorney Perlstein of the outstanding request for a statement under oath. Attorney Luchsinger, by letter dated November 10, 1994, again inquired when the plaintiff would be available to provide a statement under oath and acknowledged that the statement was the only item that State Farm needed in order to engage in settlement discussions. Another letter from attorney Luchsinger, dated December 8, 1994, confirmed that the statement under oath was scheduled for January 27, 1995. However, according to a letter dated December 20, 1994, the statement under oath was rescheduled until February 9, 1995.
 
 [2]
 
 The statement was taken on that day. The arbitration hearing was held the next day. On the day of the arbitration, State Farm offered $25,000 to settle the case before the hearing was held. That offer was refused and the arbitration hearing proceeded. The arbitrators awarded the plaintiff $75,000, which State Farm paid on or about February 22,1995.
 

 In the course of discovery for this lawsuit, the following State Farm employees were deposed: Arlene McGonagle, L. Scott White-side and Michael Moyer. In addition to the facts noted above, Mr. Whiteside and Mr. Moyer provided the following information. During his deposition, Mr. Whiteside testified that, during the entire time he was charged with evaluating the plaintiffs UIM claim, he never knew that Ms. McGonagle had valued the plaintiffs claim at $50,000 to $85,000. Deposition of L. Scott Whiteside (‘Whiteside Dep.”) at 92.
 
 [3]
 
 Mr. Whiteside also testified that he never attempted to put a value on the plaintiffs UIM claim until he had received the IME report and the plaintiffs statement under oath.
 
 Id.
 
 at 24r-25, 36-37. He testified that he needed the plaintiffs statement under oath to determine “the present status of the person, whether or not their injuries are resolving, whether or not they continue to work or if they’re having problems working, whether or not they continue to have pain in the given injured areas whether or not their injuries possibly caused them to actually fail more than they had previously, as to their standard of life.”
 
 Id.
 
 at 29-30. He further testified that, until he had that information, attorney Luchsinger was not authorized to settle the plaintiffs UIM claim for any amount.
 
 Id.
 
 at 93-94.
 

 Mr. Moyer was Mr. Whiteside’s superior from the time Mr. Whiteside was assigned the plaintiffs UIM claim until just after the arbitration hearing.
 
 Id.
 
 at 50-51. Mr. Moyer testified that, on May 24, 1994, he had valued the plaintiffs UIM claim at $12,000. Deposition of Michael Moyer (“Moyer Dep.”) at 13-15.
 
 [4]
 
 However, he did not authorize Mr. Whiteside to settle the plaintiffs claim for $12,000 because it was his understanding that attorney Perlstein had demanded $75,-000 and would not lower his demand.
 
 Id.
 
 Mr. Moyer also testified that the IME did not lower the value of the plaintiffs claim.
 
 Id.
 
 at 26. In fact, the IME “supported some of her subjective ... complaints,”
 
 id.
 
 at 33, and was “to some extent” favorable to her claim.
 
 Id.
 
 at 34. Nonetheless, after reviewing the IME no offer was made for two reasons. First, he and Mr. Whiteside believed that attorney Perlstein would not accept less than $75,000.
 
 Id.
 
 at 28-29. Second, because the plaintiffs complaints were subjective in nature, Mr. Moyer decided that a statement under oath was needed to complete a full evaluation.
 
 Id.
 
 at 31.
 

 Mr. Moyer stated that, in his view, Mr. Da Conceicao was 100% at fault for the accident.
 
 Id.
 
 at 41. He also testified that he agreed with Mr. Whiteside that no offer could be made until after the plaintiffs statement un
 
 *1190
 
 der oath was obtained.
 
 Id.
 
 at 50-51. On the morning of the arbitration, Mr. Whiteside told Mr. Moyer that he had discussed the plaintiffs statement under oath with defense counsel and that defense counsel had said the plaintiff was a good, credible witness.
 
 Id.
 
 at 52. Accordingly, Mr. Moyer authorized a settlement offer of $25,000.
 
 Id.
 

 III. Discussion
 

 A. Count I
 

 In count one of the complaint, the plaintiff advances a claim of bad faith. State Farm argues that its handling of the plaintiffs UIM claim did not constitute bad faith for the following reasons: it immediately began investigating the plaintiffs claim upon receiving notice, its requests for an IME and statement under oath were in accordance with the terms of the plaintiffs policy, and it made its offer within twenty-four hours of receiving the plaintiffs statement under oath. Defendant State Farm’s Motion for Summary Judgment at ¶¶ 35-36. In addition, State Farm identifies the following facts as providing reasonable bases for disputing the value of the plaintiffs UIM claim: the plaintiff had already received $50,000, the plaintiff was able to continue working full-time, and the plaintiff had last seen a doctor regarding her tarsal tunnel syndrome on February 23, 1993. Memorandum of Law in Support of Defendant State Farm’s Motion for Summary Judgment (“State Farm’s Memorandum”) at 10-11. The plaintiff counters by arguing that State Farm’s insistence on a statement under oath before making any offer was unreasonable and constituted bad faith. Plaintiffs Memorandum of Law in Opposition to Defendant’s Motion for Summary Judgment at 9-12. The plaintiff also argues that the offer State Farm made on the morning of the arbitration was unreasonable and constituted bad faith.
 
 Id.
 
 at 10-11.
 

 In Pennsylvania, there is no common law remedy for bad faith on the part of insurers.
 
 [5]
 

 Terletsky v. Prudential Property & Casualty Insurance Co.,
 
 437 Pa.Super. 108, 649 A.2d 680, 688 (1994) (citing
 
 D’Ambrosio v. Pennsylvania National Mutual Insurance Co.,
 
 494 Pa. 501, 431 A.2d 966, 970 (1981)). However, the Pennsylvania legislature has created a statutory remedy for bad faith on the part of insurers, which is codified at 42 Pa.C.S.A. § 8371. In the insurance context bad faith has a particular meaning:
 

 “Bad faith” on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty
 
 (i.e.,
 
 good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.
 

 Terletsky,
 
 649 A.2d at 688 (quoting
 
 Blacks’ Law Dictionary,
 
 139 (6th ed. 1990)). Bad faith must be proven by clear and convincing evidence.
 
 Id.
 
 To recover under a claim of bad faith, “the plaintiff must show that the defendant did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of a reasonable basis for denying the claim.”
 
 Id.
 

 In determining whether an insurer has acted with bad faith, one must bear in mind that:
 

 it has long been the law in Pennsylvania that an insurer stands in a fiduciary relationship to its insured and must accord the interest of its insured the same faithful consideration it gives its own interest. This is not to say that the insurer is bound to submerge its own interest in order that the insured’s interest may be made paramount---- The evaluation of the case by the insurance company must be honest, intelligent and objective.
 

 Owens v. State Farm Mutual Automobile Insurance Company,
 
 C.A. No. 92-0536, 1992 WL 210036 at *3 (E.D.Pa. Aug. 20, 1992) (citations omitted).
 

 Based on the evidence in the record and keeping in mind the plaintiffs height
 
 *1191
 
 ened burden of proof, it is my view that no reasonable fact finder could conclude that State Farm acted in bad faith when it evaluated the plaintiffs UIM claim. The reasons for this determination are as follow.
 

 First, the plaintiffs policy permitted State Farm to request the IME and the statement under oath. The plaintiff argues that State Farm should not have made her statement under oath a precondition to evaluating her UIM claim for the reason that State Farm was not entitled to a statement under oath by the terms of her policy until a party sought arbitration. Plaintiffs Response to Defendant’s Motion for Summary Judgment (“Plaintiffs Response”) at ¶¶ 18-20; Plaintiffs Memorandum of Law in Opposition to Defendant’s Motion for Summary Judgment (“Plaintiffs Memorandum”) at 1, 3. However, the record reveals that the plaintiffs attorney requested arbitration on May 18,1994 and that, on May 26, 1994, State Farm requested her statement under oath. Thus, the UIM claim was subject to arbitration before State Farm requested the statement under oath. Under the terms of the plaintiffs policy, State Farm was certainly entitled to request her statement under oath once the plaintiff had demanded arbitration of her UIM claim. Policy (Attached as Defense Exhibit F) at 17. Because State Farm’s request for a statement under oath was proper under the policy’s terms, State Farm had a reasonable basis for requesting the statement under oath in order to evaluate the plaintiffs UIM claim.
 
 Cf. Hofkin v. Provident Life & Accident Insurance Co.,
 
 81 F.3d 365, 373 (3d Cir.1996) (The court affirmed the district court’s entry of judgment as a matter of law for the defendant insurance company on the plaintiffs bad faith claim because the plaintiff had failed to comply with the defendant’s requests for information and the requests were permitted by the terms of the insurance policy.).
 

 Second, the record reveals that the plaintiff had been fully compensated for her out of pocket expenses with the first $50,000 she had received.
 
 [6]
 
 For this reason, her UIM claim could consist only of claims for pain and suffering, loss of life’s enjoyment, emotional distress and, perhaps, future medical expenses. The first three of these claims are subjective in nature and State Farm could not properly assess the value of these claims without coming to some conclusion regarding whether the plaintiff was credible in her complaints of pain and in her complaints about the present effect on her life of the injuries she had sustained. A statement under oath was an appropriate and reasonable means of evaluating the plaintiffs credibility.
 
 [7]
 
 For this reason as well, State Farm had a reasonable basis for insisting on obtaining the plaintiffs statement under oath before making a determination about the value of her UIM claim and before making a settlement offer.
 

 The plaintiff has submitted an unsigned letter dated December 29, 1995 that attorney William A. Cubit wrote to her attorney. It appears that the plaintiff expects the
 
 *1192
 
 court to consider the letter as an expert report. Attorney Cubit’s curriculum vitae reveals that he has twenty years of experience in the insurance industry in various capacities, including claims adjuster, claims manager and claims negotiator. In his letter, he opines that, even before State Farm had obtained the statement under oath, State Farm had sufficient evidence to evaluate the plaintiffs claim and to make an offer. Attorney Cubit’s Letter at [2]-[4].
 
 [8]
 
 Attorney Cubit characterizes Mr. Whiteside’s view that an evaluation of the plaintiffs UIM claim would have been premature after he (Mr. Whiteside) received the IME report as “ridiculous”.
 
 Id.
 
 at [3]. He also asserts that “the only apparent purpose [for insisting on the statement under oath] was for harassment of [the plaintiff].”
 
 Id.
 
 Mr. Cubit also expresses his view that “the delay appear[ed] to be a tactic to stall proper settlement of this claim and/or to settle for less than the appropriate value.”
 
 Id.
 

 Attorney Cubit did not swear to the opinions noted above nor to any other portion of his unsigned letter. For this reason, his letter is not competent to be considered on a motion for summary judgment.
 
 Fowle v. C & C Cola,
 
 868 F.2d 59, 67 (3d Cir.1989) (citing
 
 Adickes v. S.H. Kress & Co.,
 
 398 U.S. 144, 158 n. 17, 90 S.Ct. 1598, 1609 n. 17, 26 L.Ed.2d 142 (1970)). Therefore, the plaintiff cannot survive State Farm’s summary judgment motion regarding State Farm’s insistence on a statement under oath before making a settlement offer based on attorney Cubit’s letter.
 
 [9]
 

 Finally, because State Farm had a reasonable basis for making its offer, the amount of the offer did not constitute bad faith. State Farm took into account many factors when it determined what offer to make. It considered “the injury, the prognosis, the diagnosis, objective versus subjective [complaints], the IME report[], her own doctor’s report, the [excess medical bills and wage loss].” Moyer Dep. at 54. At trial it would be the plaintiffs burden to prove by clear and convincing evidence that State Farm’s offer of $25,000 was unreasonable and that State Farm knew or recklessly disregarded the offer’s unreasonableness. In its summary judgment motion, State Farm challenged the plaintiffs proof and, under
 
 Anderson, Celotex
 
 and
 
 Lujan,
 
 it was her burden to come forward with evidence creating a genuine issue of material fact regarding the reasonableness of State Farm’s offer. The plaintiff has presented no evidence that State Farm’s offer was unreasonable
 
 [10]
 
 and that State Farm knew or reck
 
 *1193
 
 lessly disregarded its lack of a reasonable basis for the offer. Because she has presented no such evidence, it is appropriate to enter summary judgment for State Farm.
 

 B. Count II
 

 In count two of her complaint, the plaintiff alleges that State Farm’s handling of her UIM claim constituted unfair or deceptive acts or practices under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (“CPL”), 73 P.S. § 201-1
 
 et seq.,
 
 the Pennsylvania Unfair Insurance Practices Act (“UIPA”), 40 P.S. § 1171.1
 
 et seq.,
 
 and the Unfair Claims Settlement Practices regulations, 31 Pa.Code § 146.1
 
 et seq.
 

 State Farm argues that judgment should be entered in its favor because the plaintiffs allegations and the evidence in the record support, at best, a finding that it engaged in nonfeasance. State Farm’s Memorandum at 15. In its view, nonfeasance is insufficient to state a claim under the CPL.
 
 Id.
 
 at 14. Instead, to prevail, the plaintiff must prove that State Farm engaged in misfeasance.
 
 Id.
 
 at 13-14.
 

 The plaintiff responds to this argument by asserting that the evidence in the record supports finding that State Farm engaged in the following acts of misfeasance:
 

 (1) Misrepresenting pertinent contract provisions relating to Plaintiffs and State Farm’s obligations; specifically, refusing to evaluate the file until obtaining a statement under oath.
 

 (2) Failing to acknowledge and act promptly upon written or oral communications with respect to the claim, such as not immediately forwarding a copy of Dr. Stone’s report to Plaintiff and refusing to look at any material in the file until obtaining a statement under oath.
 

 (3) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising out of insurance policies.
 

 (4) Refusing to make an offer without reviewing the available information derived from the initial investigation.
 

 (5) Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims in which the company’s liability under the policy has become reasonably clear.
 

 (6) Failing to promptly provide a reasonable explanation of the basis for refusing to make a settlement offer and, in fact, misleading plaintiffs counsel to believe that the file would be evaluated based upon Dr. Stone’s report.
 

 Plaintiffs Memorandum at 13.
 

 For the purpose of addressing this point, I will assume that the plaintiff can advance the claim she pled in Count II of her complaint.
 
 [11]
 
 The defendant is correct in arguing that nonfeasance is insufficient to make a claim under the CPL.
 
 Horowitz v. Federal Kemper Life Assurance Co.,
 
 57 F.3d 300, 307 (3d Cir.1995);
 
 Klinger v. State Farm Mutual Automobile Insurance Company,
 
 895 F.Supp. 709, 717 (M.D.Pa.1995). In my view, the conduct which the plaintiff identifies as misfeasance is, in essence, conduct that tends to show that State Farm failed “to pay insurance benefits in a timely manner.”
 
 Klinger,
 
 895 F.Supp. at 718. Such a claim does not amount to misfeasance,
 
 id.,
 
 and State Farm should be granted summary judgment with respect to Count II.
 
 [12]
 

 
 *1194
 
 C. Counts III-V
 

 In counts III-V, the plaintiff alleges that State Farm breached its insurance contract with her by the manner in which it processed her claim for UIM benefits. In its summary judgment motion, State Farm takes the position that it did not breach its insurance contract with the plaintiff because it committed no fraud when processing the plaintiffs claim and because it had no duty to pay benefits before the UIM arbitration panel made an award. State Farm’s Memorandum at 16-19.
 

 In her Memorandum of Law, the plaintiff takes the position that State Farm breached its contract with her by requiring an independent medical examination and statement under oath before evaluating her claim. Plaintiffs Memorandum at 19-21. Her argument can be summarized as follows: although the contract she had entered into with State Farm permitted State Farm to request an independent medical examination when she sought payment under her UIM coverage and the contract permitted State Farm to request her statement under oath once she requested arbitration, State Farm could nonetheless breach the contract if the request for an IME and statement under oath were unreasonable.
 

 In my view, the plaintiffs contractual argument is simply a restatement of her bad faith claim. While it is true that State Farm had a good faith duty to act reasonably towards its insured, that duty is independent of its contractual duties.
 
 See Klinger,
 
 895 F.Supp. at 713. The plaintiff has not presented any evidence that State Farm breached a single provision of the contract. Indeed, the plaintiff concedes that the contract allowed State Farm to request an IME and statement under oath. Plaintiffs Memorandum at 19. This means that when State Farm requested those items, it did not breach the contract. Accordingly, State Farm should be granted summary judgment with respect to the breach of contract claims contained in Counts III-V of the complaint.
 

 The plaintiff also alleges that State Farm fraudulently misrepresented policy terms to her. In her response to State Farm’s motion, she claims that the following acts constituted fraud: (1) State Farm’s insisting on a statement under oath before evaluating her UIM claim; (2) State Farm’s use of the statement under oath as a tactic to delay the claim and to coerce the plaintiff into lowering her demand when State Farm did not, in truth, need the statement under oath to evaluate her UIM claim; (3) State Farm’s attorney’s attempt to mislead the plaintiffs attorney by first stating that an independent medical examination was needed before evaluating the claim and then, once the IME report was obtained, telling the plaintiffs attorney that an IME was no longer needed. Plaintiffs Memorandum at 17-19.
 

 In order to establish common law fraud, the plaintiff must prove the following elements: “(1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage as the proximate result.”
 
 Pittsburgh Live, Inc. v. Servov,
 
 419 Pa.Super. 423, 615 A.2d 438, 441 (1992). Each of these elements must be proven by clear and convincing evidence.
 
 Id.
 

 With regard to the plaintiffs first contention, it is apparent that State Farm made no misrepresentation when it insisted upon obtaining the plaintiffs statement under oath before evaluating her UIM claim. As explained earlier, it was the plaintiff who demanded arbitration. Once she did so, State Farm could, and did, request her statement under oath. The request was consistent with the terms of the insurance policy and, for this reason, was not a misrepresentation.
 

 The plaintiffs second contention is that State Farm made a misrepresentation when it informed her that it needed her statement under oath in order to evaluate her UIM claim. A misrepresentation is defined as “a false representation of an existing fact.”
 
 Smith v. Renaut,
 
 387 Pa.Super. 299, 564 A.2d 188, 192 (1989). The plaintiff has presented no evidence that the statement made to her was untrue. Moreover, whether State Farm needed the statement under oath is largely a question of opinion, not fact. Hence, State Farm’s representation that it
 
 *1195
 
 needed the statement under oath before evaluating the plaintiff’s UIM claim could not constitute a misrepresentation.
 

 The plaintiff also contends that attorney Luchsinger, State Farm’s attorney, tried to mislead the plaintiff’s attorney by first stating that an independent medical examination was needed before evaluating the claim and then, once the IME report was obtained, telling the plaintiff’s attorney that an IME was no longer needed. The record contains a letter dated November 10,1994 from attorney Luchsinger to the plaintiffs attorney.
 
 [13]
 
 In that letter, attorney Luchsinger does write that he had “been advised by State Farm that they [were] no longer seeking a physical examination of [the plaintiff].” Since the plaintiff had already submitted to the IME on June 20, 1994 and State Farm had received the doctor’s report on or about July 12, 1994, attorney Luchsinger’s letter appears to be in error. Because there is no affidavit or deposition testimony from attorney Luchsinger, the record does not reveal whether the error was inadvertent or intentional. Thus, it is impossible to determine whether the first three elements of a fraud claim can be established.
 

 The plaintiffs fraud claim has two other elements, justifiable reliance and damage as a proximate result. When the plaintiffs attorney received the November 10,1994 letter he and the plaintiff both knew that the plaintiff had already undergone the IME and the plaintiffs attorney had already received the IME report. Thus, the plaintiff and her attorney had to have known that attorney Luehsinger’s representation was erroneous. For this reason, any reliance upon that representation was unjustifiable.
 
 Cf. Smith v. Renaut,
 
 387 Pa.Super. 299, 564 A.2d 188, 192 (1989) (Reliance is not justifiable where the truth could be ascertained with common prudence or diligence.) (citation omitted). Moreover, the plaintiff has failed to present any evidence that she or her attorney actually relied upon Mr. Luchsinger’s representation when they made any decision regarding her UIM claim. Accordingly, I will recommend that State Farm’s motion for summary judgment be granted with respect to the fraud claims contained in Counts III-V of the complaint.
 

 My recommendation follows.
 

 RECOMMENDATION
 

 AND NOW, this 20th day of May, 1996 it is hereby RECOMMENDED that the defendant’s motion for summary judgment be GRANTED with respect to all counts of the complaint.
 

 [1]
 

 . State Farm attached portions of Ms. McGonagle's deposition as Exhibit B to its motion for summary judgment.
 

 [2]
 

 . The parties agree that the statement under oath was delayed until this date in order to accommodate the plaintiff.
 

 [3]
 

 . State Farm attached portions of Mr. White-side's deposition as Exhibit E to its motion for summary judgment. The plaintiff attached much of the balance of Mr. Whiteside's deposition as Exhibit F to her Response.
 

 [4]
 

 . State Farm attached the entire deposition of Mr. Moyer as Exhibit M to its motion for summary judgment.
 

 [5]
 

 . Neither party has contended that the law of a state other than Pennsylvania governs the plaintiff's bad faith claim.
 

 [6]
 

 . As a result of her accident, the plaintiff suffered uncompensated lost wages and medical expenses of $14,381.74. Thus, the $50,000 she received from State Farm based on Mr. Da Conceicao’s liability fully compensated her for these losses.
 

 [7]
 

 . Mr. Whiteside and Mr. Moyer, State Farm’s UIM evaluators, testified that they needed the statement under oath for this purpose and to evaluate the plaintiff's present condition. Mr. Whiteside testified that he needed the plaintiff’s statement under oath to determine "the present status of the person, whether or not their injuries are resolving, whether or not they continue to work or if they’re having problems working, whether or not they continue to have pain in the given injured areas, whether or not their injuries possibly caused them to actually fail more than they had previously, as to their standard of life.” Whiteside Dep. at 29-30. Mr. Moyer testified that he needed the statement under oath because of “the subjective complaints, raised by Linda Leo at the IME, and we needed to discuss those subjective complaints with her. We also did not have any information about prior injuries, if there were any. And we also did not know the extent this injury or these complaints had on her daily life activities.” Moyer Dep. at 27. Mr. Moyer also testified that after the statement under oath was obtained, Mr. Whiteside discussed the statement with State Farm's attorney.
 
 Id.
 
 at 52. Mr. Whiteside informed Mr. Moyer that State Farm’s attorney "conveyed that Linda Leo was credible, that she made a good appearance.”
 
 Id.
 
 Mr. Moyer explained that "when I say credible, it goes to her subjective complaints versus the objective complaints, that she seemed credible with respect to those, and had a good appearance.”
 
 Id.
 

 [8]
 

 . The plaintiff has attached a copy of Attorney Cubit's letter and curriculum vitae as Exhibit G to her Response. The pages of attorney Cubit's letter are not numbered.
 

 [9]
 

 . If I were to consider attorney Cubit’s letter, I would conclude that it does not create a genuine issue of material fact regarding whether State Farm had a reasonable basis for insisting upon the plaintiff’s statement under oath before evaluating her UIM claim. First, attorney Cubit ignores the reasons State Farm’s employees gave when they explained why they believed that the plaintiff's statement under oath was needed. Therefore, his letter does not call into question or rebut the reasonableness of State Farm’s basis for acting as it did. Second, he does not explain where in the record, without the statement under oath, there was evidence of: the present effect of the plaintiff's injury on her life, or the plaintiff's credibility with respect to that issue. Further, attorney Cubit does not point to any piece of record evidence that supports his assertions that State Farm's purpose in insisting on the statement under oath was to harass the plaintiff or was a tactic to delay settlement or to cause the plaintiff to accept less than the appropriate amount. As I explained in a Memorandum and Order dated January 24, 1996, the plaintiff or her attorney, not State Farm, were the cause of the delay in obtaining the plaintiff's statement under oath.
 
 Leo v. State Farm Mutual Automobile Insurance Co.,
 
 C.A. No. 95-2953, slip op. at 7-8, 1996 WL 37827 (E.D.Pa. Jan. 25, 1996). In short, attorney Cubit has failed to present or to identify any specific facts which rebut the facts that State Farm relied upon to demonstrate that it had reasonable basis for acting as it did. In the absence of specific facts to support it, attorney Cubit's opinion that State Farm had no reasonable basis for acting as it did does not create a genuine issue with respect to that material fact.
 
 See Lujan,
 
 497 U.S. at 888-89, 110 S.Ct. at 3188— 89.
 

 [10]
 

 . The plaintiff's expert, attorney Cubit, does not present any evidence that State Farm’s offer was unreasonable. Instead, he states that the offer was "inappropriate" because State Farm should have known that the plaintiff would not accept that offer at the time it was made. Attorney Cubit’s letter at [3]. That the plaintiff would not accept the offer at the lime it was made does not establish that the offer itself was unreasonable. Further, attorney Cubit does not consider that the delay in obtaining the statement under oath
 
 *1193
 
 was the direct cause of the timing of State Farm's offer and that the statement had been delayed for many months in order to accommodate the plaintiff. Accordingly, attorney Cubit’s letter does not create a genuine issue of material fact regarding the reasonableness of the offer State Farm made.
 

 [11]
 

 . In a Memorandum and Order dated October 17, 1995, the Honorable Louis H. Poliak noted that the plaintiff would "at a later stage of this case, be required to identify the ambiguities in the Consumer Protection Act that would justify reference to the UIPA.”
 
 Leo v. State Farm Mutual Automobile Insurance Company,
 
 908 F.Supp. 254, 257 (E.D.Pa.1995). That time has now come and the plaintiff has failed to identify the ambiguities to which Judge Poliak alluded. In my view, the plaintiff’s failure would justify granting the defendant summary judgment on Count II.
 

 [12]
 

 . The plaintiff makes no attempt to explain how Pennsylvania's Unfair Claim Settlement Practices regulations are relevant to Count II. Accordingly, those regulations have not been considered.
 

 [13]
 

 . State Farm attached a copy of this letter as part of Exhibit K to its motion for summary judgment.