**TJS Brokerage & Co. Inc. v.
Hartford Casualty Insurance Co.**

*Robin Grey, John Ellison* and *Robert Frankel,* for plaintiff.

*Patrick Keenan, Thomas Close* and *Joseph Connor III,* for defendants.

HERRON, *J.,* July 26, 2002—Defendant Hartford Casualty Insurance Co. filed this motion for nonsuit against plaintiff TJS Brokerage & Co. Inc. following TJS's case in chief in its bad faith trial. For the reasons set forth below, Hartford's motion is granted.

## BACKGROUND

TJS, a transportation broker, is a Pennsylvania corporation located at 4940 Disston Street, Philadelphia, Pennsylvania. Customers contact TJS with freight to be shipped, and TJS arranges for trucking companies to carry

the freight. Thomas J. Sicalides is the president and sole shareholder of TJS. In addition, he owns or did own, inter alia, T&T Freight Consolidators, located at 6918 State Road.

Hartford is an Indiana corporation, engaged in the business of selling insurance and located at Hartford Plaza, Hartford, Connecticut. Hartford sold a multi-risk insurance policy, no. 39UUCLE4914 to TJS. The policy was effective from June 18, 1998, to June 18, 1999. The named insureds under the policy were TJS, Keystone Transportation Inc., Garden State Transportation Inc., Beverly Hills Sales and Marketing Inc., Thomas Sicalides, Michael's Transport Inc. and T&T Freight Consolidators.

Among other coverage, the policy included: (a) business income loss coverage of $1,200,000 with 80 percent co-insurance, (b) business personal property coverage of $350,000 with a $500 deductible and 80 percent co-insurance, (c) computer equipment coverage of $350,000 with 80 percent co-insurance, and (d) valuable papers coverage of $100,000 with a $250 deductible and no co-insurance. TJS purchased additional coverage such that the policy covered the full replacement cost of business personal property and computer equipment that was actually replaced.

On April 2, 1999, Vincent Sicalides, Thomas Sicalides' brother, allegedly vandalized the offices of TJS at 4940 Disston Street, the TJS warehouse, and the neighboring offices of T&T Freight Consolidators and Michael's Trucking at 6918 State Road. TJS employees Gary Krinick and Steven Horvay were present at the TJS offices during the vandalism. Police arrived and took

Vincent Sicalides into custody. TJS submitted claims to Hartford for business personal property, computer equipment, valuable papers and business income losses. While most of these claims had been resolved by the time of trial, the business income loss and phone switch claims remained at issue.

Within days of the vandalism incident Alan Mycek, the Hartford adjuster who handled TJS's claim, visited the TJS premises.[1] Between April 19, 1999, and June 18, 1999, Hartford processed TJS's claims and tendered eight checks to TJS totaling $533,297.15. On May 14, 1999, Hartford advanced $50,000 toward the April 1999 business income loss claim. On June 4, 1999, Hartford advanced $50,000 toward the May 1999 business income loss claim. Thereafter, Hartford refused to advance TJS any additional money toward the business income loss claim because TJS and the other named insureds in the policy had not provided Hartford with sufficient financial information to evaluate that claim.

Several factors complicated TJS's submission of the requested information. First, some of the requested financial information was purportedly stored on the hard drives of the damaged computers. Second, in July 1999, the Department of Transportation seized TJS's records. Third, Hartford's requests for information were piecemeal such that it was not clear exactly what information Hartford needed. Fourth, TJS and the other named insureds appeared to have been less than meticulous record keepers. On December 6, 1999, Hartford's coun-

---

1. Thomas Peterman, TJS's insurance broker, was also in attendance.

sel informed TJS that the proof of loss that TJS submitted was incomplete. Between April 19, 1999, and June 18, 1999, Hartford advanced $433,297.15 for TJS's business personal property and computer equipment claims.

In its complaint, TJS asserted a claim of bad faith against Hartford in denying TJS's benefits. TJS's bad faith trial against Hartford commenced on March 6, 2002. On May 29, 2002, following TJS's case in chief, Hartford filed this motion for nonsuit. To the extent that it is relevant and helpful, this court's opinion, dated April 22, 2002, is incorporated by reference. This opinion, presently on appeal, dealt with the non-bad faith claims tried to a jury and resulting in a verdict of $650,000 for business income loss and $2,488.60 for the phone switch claim in favor of plaintiff TJS.

## DISCUSSION

### I. *Legal Standard*

Pa.R.C.P. 230.1(a)(1) states that a court "may enter a nonsuit on any and all causes of action if, at the close of the plaintiff's case on liability, the plaintiff has failed to establish a right to relief." The court, in making this determination, must give:

"[T]he plaintiff the benefit of all reasonable inferences arising from the evidence. When so viewed, a nonsuit is properly entered if the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action; it is the duty of the trial court to make this determination prior to the submission of the case to the jury." *Parker v. Freilich,* 2002 WL 1308708

at 3 (Pa. Super. 2002) (citing *Hong v. Pelagatti,* 765 A.2d 1117, 1121 (Pa. Super. 2000)).

The Pennsylvania Superior Court has spoken on what is necessary to establish a bad faith insurance claim:

"*Insurance.* 'Bad faith' on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.,* good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith. Black's Law Dictionary 139 (6th ed. 1990). . . .

"Further, bad faith must be proven by clear and convincing evidence and not merely insinuated. . . . Finally, to recover under a claim of bad faith, the plaintiff must show that the defendant did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Terletsky v. Prudential Property & Casualty Insurance Co.,* 437 Pa. Super. 108, 125, 649 A.2d 680, 688 (1994). (citations omitted)

## A. TJS Has Not Met Its Burden of Showing That Hartford Lacked a Reasonable Basis For Denying Benefits to TJS

As discussed above, the plaintiff has the burden of proving bad faith by clear and convincing evidence. *Terletsky* at 125, 649 A.2d at 688. Here, even if the court gives TJS the benefit of all reasonable inferences arising from the evidence it provided, TJS has still failed to es-

tablish the necessary elements to maintain a bad faith claim. Although TJS argues that Hartford acted in bad faith in processing its claim, it fails to provide clear and convincing evidence to support its argument. TJS urges that in denying benefits, Hartford improperly relied on Steve Lieb, William Mooney, and Arnie Friedman for information regarding TJS's negative business and financial condition. Pl's opp. brief ¶15. Specifically, TJS argues that it was unreasonable for Hartford to rely on these "liars" when it could have asked TJS's financial representatives about TJS's financial condition. *Id.* at ¶¶15-21. However, TJS does not offer evidence suggesting that Hartford *lacked* a reasonable basis for denying benefits. In fact, as Hartford correctly suggests, TJS "did not present any evidence of the state of mind of Hartford." Def's mem. of law at 5.

TJS also asserts that Hartford acted in bad faith when it neither denied nor accepted the proof of loss, when it failed to update TJS as to the status of the claim, and when it repeatedly asked for the "same information over and over again." Pl's opp. brief ¶¶4-6, 10, 12, 32. However, again, at no point does TJS offer clear and convincing evidence of Hartford's lack of a reasonable basis for these actions. Admittedly, these actions of Hartford may be considered negligent, or bad judgment, but it hardly arises to the level of bad faith espoused by the Superior Court in *Terletsky. Terletsky* at 125, 649 A.2d at 688 (citing Black's Law Dictionary, 139 (6th ed. 1990) to hold that "mere negligence or bad judgment is not bad faith").

Finally, TJS cites to several cases without explaining how these cases are relevant or how these help TJS meet

its heavy burden of showing how Hartford acted in bad faith. Pl's resp. mem. of law at 3.[2] Specifically, TJS proclaims that Hartford's actions were "outrageous" and "with a dishonest purpose and evil motive," but fails to provide this court with any evidence, let alone clear and convincing evidence, of how these actions qualify as such. See *Jung v. Nationwide Mutual Insurance Co.*, 949 F. Supp. 353, 360 (E.D. Pa. 1997) (granting summary judgment on a bad faith claim, holding that in the absence of evidence revealing a dishonest purpose, it is not bad faith for insurer to aggressively investigate and protect its interests). Without clear and convincing evidence of Hartford's lack of reasonable basis in denying benefits to TJS, this court must grant Hartford's motion for nonsuit.

## II. *Hartford Had Several Reasonable Bases In Denying Benefits To TJS*

Although TJS has failed to show that Hartford lacked a reasonable basis, Hartford, on the other hand, has successfully shown that it had several reasonable bases to deny benefits. Pursuant to the insurance policy TJS had with Hartford, the coverage provided is void:

"[I]n any case of fraud by you as it relates to this coverage part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

"(1) This coverage part;

---

2. Specifically, TJS directs this court to *Focht v. Rabada*, 217 Pa. Super. 35, 38, 268 A.2d 157, 159 (1970), and *Jung v. Nationwide Mutual Insurance Co.*, 949 F. Supp. 353, 360 (E.D. Pa. 1997).

"(2) The covered property;

"(3) Your interest in the covered property; or

"(4) A claim under this coverage part." Def's mem. of law at 5 (citing exhibit D-549, Commercial Property Conditions form (CP 00 90 07 88), section A, p. 1 of 2).

After an investigation, Hartford denied benefits as it concluded that TJS had misrepresented several material facts including, inter alia, the whereabouts of Vincent Sicalides, the absence of computer back-up tapes, the amount TJS paid Sprint for the new phone switch, and the manner in which the vandalism loss occurred. Def's mem. of law at 7. As discussed below, this court agrees with Hartford and holds that it had several reasonable bases for denying benefits to TJS.

## A. Whereabouts of Vincent Sicalides

Hartford reasonably concluded that Thomas Sicalides concealed the whereabouts of Vincent Sicalides, his brother, thereby breaching the policy provision discussed above. Hartford directs this court to several occasions when Thomas Sicalides claimed not to know of his brother's whereabouts following the vandalism. *Id.* at 6 (citing N.T. 11/27/01 at 78-80, 83, 84-86, 87, 89-91). However, Hartford argues that it had a reasonable basis to believe that Thomas Sicalides falsely denied knowing the whereabouts of his brother. Specifically, Hartford explains that during its investigation it discovered, inter alia, that Vincent Sicalides was living with his sister, Mary Louise, in Texas, Thomas Sicalides spoke frequently with Mary Louise following the vandalism, and there was videotape of Vincent Sicalides at the home of

Mary Louise. Def's mem. of law at 6-9 (citing N.T. 11/27/01 at 88, 91-94, 95-99, 101, 102-103; N.T. 11/28/01 at 123-24, 133-35, 139; N.T. 11/29/01 114-15, 117, 124-25, 134; N.T. 11/30/01 at 8, 21-22, 25, 30). As Hartford correctly concluded, "[t]he evidence gathered . . . provided ample support for its reasonable belief that Thomas Sicalides knew the whereabouts of Vincent Sicalides, had spoken to him, and concealed this information from Hartford." Def's mem. of law at 9.

TJS counters arguing that "Hartford failed to present any reliable or credible evidence at any time during this litigation that Tom Sicalides knew the location of his brother Vincent Sicalides." Pl's resp. mem. of law at 8. However, TJS ignores the fact that the focus of the inquiry is whether Hartford had a reasonable basis to deny benefits, not whether Thomas Sicalides actually knew of the location of his brother. Given the conflicting statements by Thomas Sicalides, and the various sightings of Vincent Sicalides, there was ample support for Hartford to deny benefits as it reasonably believed that Thomas Sicalides was concealing the whereabouts of his brother. See *O'Donnell v. Allstate Insurance Co.,* 734 A.2d 901, 907-908 n.7 (Pa. Super. 1999) (dismissing a bad faith claim relying upon these reasonable bases or "red flags" of insurer; failure of claimant to provide accurate information about the whereabouts of her mother, the insured; statements by the claimant that she didn't want the insured to know about the loss; allegations of a burglary by claimant, but police reports indicating there were no signs of forced entry; and claimant's refusal to provide contact information of co-purchaser of stolen items for insurer's verification).

## B. Computer Back-up Tapes and Amount Paid
for Phone Switch

Hartford also reasonably concluded that TJS concealed the existence of computer back-up tapes in order to prevent Hartford from discovering the unfavorable financial state of TJS. Def's mem. of law at 9. Hartford argues that the following facts supported this conclusion: TJS refused to take Hartford's offer to send the damaged computer hard drive to a firm in New Hampshire to retrieve financial information; Hartford was not advised of the fact that TJS created nightly back-up tapes of data from the computer system and stored them in a secured area; and Hartford was not given the 1998 trial balance which would have showed financial losses for TJS that were higher than those reported in earlier financial statements. Def's mem. of law at 9 (citing N.T. 11/27/01 at 128-29; N.T. 11/28/01 at 174-75; N.T. 11/29/01 at 38-42, 108-109, 133; N.T. 11/30/01 at 63-68; N.T. 3/6/02 at 159-62, 174-76). It is clear to this court that this conduct provided a reasonable basis for Hartford to deny benefits.

TJS counters arguing that "Hartford is attempting to convince this court that because Hartford did not take the back-up tapes and hard drive to New Hampshire, and based upon the statement of a known liar and direct competitor, Steve Lieb, Hartford was prejudiced in its attempt to prove that plaintiff was in a poor finanical condition." Pl's resp. mem. of law at 9. However, TJS incorrectly represents Hartford's argument as it is not arguing prejudice. Hartford, instead, argues that the conflicting evidence regarding the back-up tapes provided a reasonable basis to deny benefits to TJS. This court agrees.

In addition to the conduct surrounding the back-up tapes, TJS's alleged misrepresentations concerning the amount it agreed to and did pay for the new phone switch also provided Hartford a reasonable basis from which to deny benefits. Pursuant to the insurance policy, Hartford would pay TJS the "amount you actually spend that is necessary to repair or replace the lost or damaged property." Def's mem. of law at 10 (citing D-549, Building and Personal Property Coverage form, "G. Optional coverages" ¶3(e)(3), p. 11 of 11). Although TJS represented that Sprint had been paid $266,280.20 for the new phone switch, and that it denied any discussions with Sprint to reduce the price of the phone switch below $263,000, TJS only paid Sprint $152,000. Def's mem. of law at 10 (citing N.T. 11/27/01 at 112-14, 115-16, 124). Moreover, TJS allegedly withheld documentation showing that, after some changes to the original phone switch order, the final price of the phone switch was $213,699. *Id.* (citing N.T. 11/27/01 at 117-19, 122-25; 11/30/01 at 34-37, 48-49, 59-60; N.T. 3/6/02 130-36). Since Hartford had already paid TJS $263,731.60 for the phone switch and then discovered the subsequent conflicting evidence, this court concludes that Hartford had a reasonable basis for denying benefits as it believed that TJS misrepresented the amount it agreed to and did pay for the phone switch. See *Leo v. State Farm Mutual Auto. Insurance Co.,* 939 F. Supp. 1186 (E.D. Pa. 1996) (holding that the following all amount to an insurance company's reasonable basis for denying benefits and therefore are not bad faith: conflicting medical records regarding injuries; plaintiffs having been fully compensated for out of pocket expenses with an amount less than amount of coverage; and an

insurance company's request for a statement under oath regarding injuries).

## C. The Manner in Which Loss Occurred

Based on the conflicting reports and testimony, Hartford had a reasonable basis for concluding that TJS misrepresented the manner in which the loss occurred. For example, Hartford shows that although Thomas Sicalides testified that Vincent Sicalides was enraged prior to the vandalism, another TJS employee noticed that when she left work on the day of the vandalism, "Vincent seemed fine; he was not enraged . . . ." Def's mem. of law at 11 (citing N.T. 11/27/01 at 73; N.T. 11/29/01 at 148-49).

Further, Hartford's investigation revealed conflicting evidence regarding the time and duration of the vandalism. On the one hand, there was information that Vincent Sicalides vandalized both TJS's and T&T's property[3] during a 15 to 30 minute window of opportunity. *Id.* (citing N.T. 11/27/01 at 72; N.T. 11/29/01 at 148). However, Hartford directs this court to testimony suggesting that Thomas Sicalides may have been involved in the vandalism at T&T as well. *Id.* Specifically, Hartford provides the testimony of Steve Horvay, who although he witnessed Vincent Sicalides break a lightbulb at TJS, did not witness any damage at T&T, even though he was at T&T moments before Vincent Sicalides was arrested at TJS. *Id.* at 12 (citing N.T. 11/28/01 at 102-107, 109). In fact, Horvay testified that he first learned of any damage

---

3. As discussed above, TJS maintains offices on 4940 Disston Street and T&T maintains offices on 6918 State Road. TJS alleges that both these facilities were vandalized by Vincent Sicalides.

to T&T when he was told by Thomas Sicalides. *Id.* (N.T. 11/28/01 at 107, 109). Hartford therefore reasonably concluded that the manner in which the damages occurred to TJS and T&T may have been misrepresented, since "[t]he damage was only 'discovered' after Vincent was arrested at TJS, and it was 'discovered' by Thomas Sicalides who would have had access to the T&T office." *Id.* Given all this conflicting testimony, this court concludes that Hartford had a reasonable basis to deny TJS its benefits. *Terletsky* at 126-28, 649 A.2d at 689 (holding that insurance company did not act in bad faith because the following constituted reasonable bases in denying benefits to a covered motorist: conflicting information regarding medical diagnoses, varying accounts of the questionable severity of injuries; unsettled Pennsylvania law on "stacking").

Having shown that it had a reasonable basis, and that TJS has failed to establish its right to relief, Hartford's motion for nonsuit is granted.

## CONCLUSION

For the reasons discussed above, Hartford's motion for nonsuit is granted.

## ORDER

And now, July 26, 2002, upon the consideration of the motion for nonsuit of Hartford Casualty Insurance Co., the responses thereto, the trial record, and in accordance with the opinion being filed contemporaneously with this order, it is hereby ordered and decreed that the motion for nonsuit is granted.