Maia CAPLAN,

v.

FELLHEIMER, EICHEN, BRAVERMAN & KASKEY, et. al.

No. CIV.A. 96–CV–6225.

United States District Court, E.D. Pennsylvania.

April 30, 1998.

**300**

Maia Caplan, Washington, DC, pro se.

Helen Mandel Braverman, Fellheimer, Braverman & Kaskey, Philadelphia, PA, for Defendants.

Alfred W. Putnam, Jr., Drinker, Biddle & Reath LLP, Philadelphia, PA, for Defendant Vigilant Insurance Co.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

This case is once again before this Court upon the cross-motions for summary judgment of defendants Fellheimer, Eichen, Braverman & Kaskey (hereinafter "FEB & K") and Vigilant Insurance Company on the cross-claim of the defendant law firm against Vigilant. For the reasons which follow, Vigilant's motion shall be granted and FEB & K's motion denied.

### Case History

This lawsuit actually has its origins in a prior suit between plaintiff Maia Caplan and defendant FEB & K, her former employer, in which Caplan alleged that FEB & K and one of its partners, David Braverman, violated Title VII of the Civil Rights Act of 1964 by creating a hostile work environment for women at the firm and by sexually harassing Caplan's secretary. Caplan's complaint in that action also sought relief from FEB & K and Braverman under theories of negligent and intentional infliction of emotional distress, tortious interference with existing and prospective contracts, and defamation. FEB & K and Braverman tendered the defense of that case to Vigilant, which insured the firm under a Commercial Property/Business Income policy.

In May, 1995, on the basis of a clause in the policy authorizing it to act as its insureds' agent to settle claims or suits as it deemed "appropriate," Vigilant settled Caplan's claims against both FEB & K and Braverman for $200,000. As the settlement was without FEB & K's and Braverman's consent, they applied for and obtained an injunction from this Court. That injunction, however, was subsequently reversed by the Third Circuit and the settlement upheld.[1]

A short while after that action[2] was settled, plaintiff avers that FEB & K and David Braverman, acting on behalf of the law firm, embarked on a crusade to retaliate against her for the settlement by, *inter alia,* commencing multiple legal actions against her and by giving false statements to the *Legal Intelligencer* and *The Philadelphia Inquirer* to the effect that she was willing to retract her claims of discrimination as false in exchange for monetary compensation and that the settlement of plaintiff's claims was needless and had consequences extending to every employer. Plaintiff further avers that Robert White, a representative of Vigilant, told the *Employment Discrimination Report* that Caplan I had been settled only because the legal fees were "through the roof" and Vigilant had to put an end to the escalating legal fees. As a result of these alleged activities and statements, Ms. Caplan brought this action for retaliation pursuant to Title VII and for defamation under Pennsylvania com-

---

1. *See: Caplan v. Fellheimer, Eichen, Braverman & Kaskey,* 68 F.3d 828 (3rd Cir.1995).

2. The first lawsuit shall hereafter be referred to as "Caplan I" while the case at hand shall be designated "Caplan II."

mon law under this Court's diversity jurisdiction on September 12, 1996. This lawsuit, too, was formally settled by Vigilant on behalf of itself and FEB & K in December, 1996. However, the defendants' cross-claim against Vigilant and their counterclaim against Caplan for fraud, malicious prosecution and breach of contract were specifically excluded from the settlement agreement and release. It is FEB & K's cross-claim against Vigilant under the theories of breach of contract, bad faith, and for violations of the Unfair Insurance Practices Act and Unfair Trade Practices and Consumer Protection Law for Vigilant's alleged refusal to provide FEB & K with a defense in Caplan II which is the subject of the pending cross-motions for summary judgment.

### Standards Governing Summary Judgment Motions

The standards for determining whether summary judgment is properly entered in cases pending before the district courts are governed by Fed.R.Civ.P. 56. Subsection (c) of that rule states, in pertinent part,

> ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

In this way, a motion for summary judgment requires the court to look beyond the bare allegations of the pleadings to determine if they have sufficient factual support to warrant their consideration at trial. *Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F.2d 1287 (D.C.Cir.1988), *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). *See Also: Aries Realty, Inc. v. AGS Columbia Associates,* 751 F.Supp. 444 (S.D.N.Y.1990).

As a general rule, the party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a summary judgment motion, the court must view the facts in the light most favorable to the party opposing the motion and all reasonable inferences from the facts must be drawn in favor of that party as well. *U.S. v. Kensington Hospital,* 760 F.Supp. 1120 (E.D.Pa. 1991); *Schillachi v. Flying Dutchman Motorcycle Club,* 751 F.Supp. 1169 (E.D.Pa. 1990).

When, however, "a motion for summary judgment is made and supported [by affidavits or otherwise], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate may be entered against [it]." Fed.R.Civ.P. 56(e).

A material fact has been defined as one which might affect the outcome of the suit under relevant substantive law. *Boykin v. Bloomsburg University of Pennsylvania,* 893 F.Supp. 378, 393 (M.D.Pa.1995) citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.,* citing *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

### Discussion

The gravamen of FEB & K's cross-claim against Vigilant is Vigilant's purported refusal to provide FEB & K with a defense despite its repeated tender of the defense to Vigilant. (Defendant's Cross–Claim, at ¶ s9–12, 18–19). This refusal, according to FEB & K, represents a breach of the insurance contract, a violation of the Unfair Insurance Practices Act, 40 P.S. § 1171.1, *et seq.* ("UIPA") and the Unfair Trade Practices and Consumer Proection Law, 73 P.S. § 201–

1, *et. seq.* and constitutes Bad Faith within the meaning of 42 Pa.C.S. § 8371.

### A. FEB & K's Claims Under the UIPA and the UTPCPL.

■ The UIPA was enacted to curb unfair or deceptive practices in the insurance industry and vests authority in the Insurance Commissioner of the Commonwealth of Pennsylvania to investigate specifically defined acts and practices of insurers. *Great West Life Assurance Co. v. Levithan,* 834 F.Supp. 858, 863 (E.D.Pa.1993), citing *Pekular v. Eich,* 355 Pa.Super. 276, 513 A.2d 427, 429 (1986); 40 P.S. § 1171.7. It is now well-established, however, that the UIPA can only be enforced by the state insurance commissioner and not by way of private action. *Smith v. Nationwide Mutual Fire Insurance Co.,* 935 F.Supp. 616, 620 (W.D.Pa.1996); *Parasco v. Pacific Indemnity Co.,* 920 F.Supp. 647, 655 (E.D.Pa.1996); *Aetna Casualty and Surety Co. v. Ericksen,* 903 F.Supp. 836, 841 (M.D.Pa.1995); *MacFarland v. United States Fidelity & Guarantee Co.,* 818 F.Supp. 108, 110 (E.D.Pa.1993); *Romano v. Nationwide Mutual Fire Insurance Co.,* 435 Pa.Super. 545, 554, 646 A.2d 1228, 1233 (1994). Under this authority then, it is clear that FEB & K cannot maintain a private cause of action under the UIPA and judgment must therefore be entered in favor of Vigilant on Count II of the law firm's cross-claim.

■ We reach the same conclusion with respect to Count IV of FEB & K's cross-claim seeking relief under the Unfair Trade Practices and Consumer Protection Law. In Pennsylvania, only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the UTPCPL. Failure to perform a contractual duty, or nonfeasance, is not actionable. *Horowitz v. Federal Kemper Life Assurance Co.,* 57 F.3d 300, 307 (3rd Cir.1995), citing *Gordon v. Pennsylvania Blue Shield,* 378 Pa.Super. 256, 264, 548 A.2d 600, 604 (1988); *Leo v. State Farm Mutual Automobile Insurance Co.,* 939 F.Supp. 1186, 1193 (E.D.Pa.1996), *aff'd* 116 F.3d 468 (3rd Cir.1997); *Smith v. Nationwide Mutual Fire Insurance Co.,* 935 F.Supp. 616, 620 (E.D.Pa.1996).

■ In this case, although FEB & K's cross-claim avers that Vigilant "improper[ly] perform[ed] its obligations under the policy which constitutes a misfeasance of a contracted obligation," it is clear from the correspondence and other exhibits attached to the parties' cross-motions and responses thereto that FEB & K's claim is premised upon Vigilant's purported refusal to provide FEB & K with a defense to Caplan's claims. (Cross–Claim, ¶s 9–12, 17–18, 22, 28, 31). As such a failure/refusal to perform the contractual obligation to defend is a non-actionable nonfeasance, judgment is properly entered in favor of Vigilant on the Unfair Trade Practices cause of action.

Moreover, even were this Court to read FEB & K's cross-claim as pleading malfeasance against Vigilant, the evidence produced by both parties clearly demonstrates that a defense was effectively tendered and the matter settled *before* it became necessary to file a responsive pleading to the complaint or defend the action. (Exhibits "A," "C"—"E" to Vigilant's Memorandum of Law in Opposition to FEB & K's Motion for Summary Judgment; Exhibits "H," "K"—"Q" attached to Affidavit of Helen Mandel Braverman in support of FEB & K's Motion for Summary Judgment). We therefore find that no malfeasance occurred and for this reason, too, judgment shall be entered in favor of Vigilant and against FEB & K on Count IV of the cross-claim.

### B. FEB & K's Breach of Contract Claim.

In Count I of its cross-claim, FEB & K submits that Vigilant Insurance Company breached its obligations under the insurance policy by refusing to defend and/or tender a defense as to FEB & K in connection with the Caplan II case thereby forcing FEB & K to incur the costs of defending itself. (Cross-claim, ¶s 7–13, 18–20).

■ Generally speaking, under Pennsylvania law, the issuer of a general liability insurance policy has a duty to defend its insured when the allegations in the complaint against it could potentially fall within the coverage of the policy. *Air Products and Chemicals, Inc. v. Hartford Accident and Indemnity Co.,* 25 F.3d 177, 179 (3rd Cir.1994) citing,

*inter alia, Gedeon v. State Farm Mutual Automobile Insurance Co.,* 410 Pa. 55, 188 A.2d 320, 321–22 (1963). *See Also: Humphreys v. Niagara Fire Ins. Co.,* 404 Pa.Super. 347, 590 A.2d 1267, 1271, *app. denied,* 528 Pa. 637, 598 A.2d 994 (1991). In interpreting an insurance policy, the court must ascertain the intent of the parties as manifested by the language of the policy. *Visiting Nurse Association of Greater Phila. v. St. Paul Fire and Marine Insurance Co.* 65 F.3d 1097, 1099 (3rd Cir.1995), citing *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563, 566 (1983). Where the language of the policy is clear and unambiguous, it must be given its plain and ordinary meaning; where it is ambiguous, it must be construed in favor of the insured. *Id.*

■ To make out a cause of action for breach of contract under the law of Pennsylvania, four elements must be proven: (1) the existence of a contract to which plaintiff and defendant were parties; (2) the essential terms of the contract; (3) a breach of the duty imposed by the contract and (4) that damages resulted from the breach. *Brader v. Allegheny General Hospital,* 64 F.3d 869, 878 (3rd Cir.1995); *Electron Energy Corp. v. Short,* 408 Pa.Super. 563, 597 A.2d 175, 178–179 (1991), *aff'd w/o opinion,* 533 Pa. 66, 618 A.2d 395 (1993); *General State Authority v. Coleman Cable & Wire Co.,* 27 Pa.Cmwlth. 385, 365 A.2d 1347 (1976).

■ In this case, the terms of the insurance contract between Vigilant and FEB & K provides in pertinent part:

**DEFENSE OF CLAIMS OR SUITS** [3]

1. We will defend claims or suits against the insured seeking damages to which this insurance applies. We may make:

  a. Such investigation of any **occurrence, claim** or **suit,** and

  b. Such settlement within the applicable Amount of Insurance available;

as we think appropriate.

2. Our right and duty to defend such claims or **suits** end when we have used up the Amount of Insurance available, as provided under LIMITS OF INSURANCE. This applies both to claims and **suits** pending at that time and those filed thereafter.

3. When we control the defense of a claim or **suit** we will pay for the **defense** expense. If by mutual agreement or court order the insured assumes control before the applicable Amount of Insurance available is used up, we will reimburse the insured for reasonable defense expense.

(emphasis in original)

We find this language to be clear and unambiguous and therefore properly interpreted in accordance with its plain and ordinary meaning. In so doing, we again find that the record shows that Caplan's claims were effectively settled by Vigilant on FEB & K's behalf in principal as of October, 1996, although the actual releases were not finalized until December 6, 1996 because FEB & K objected to the release language. (Exhibits "K"—"Q" to Affidavit of Helen Mandel Braverman in support of FEB & K's Motion for Summary Judgment). We thus conclude that, contrary to FEB & K's assertions, Vigilant's contractual obligation to defend was satisfied and no breach of the insurance contract occurred.

■ Furthermore, also contrary to cross-claim plaintiff's assertions and as the exhibits attached in support of its own motion for summary judgment reflect, rather than tendering the defense of this action to Vigilant, it unilaterally informed Vigilant that it would be assuming its own defense and would be looking to Vigilant for payment of its own legal fees. (See, e.g. Exhibits "C," "E"—"I" to Affidavit of Helen Mandel Braverman in Support of FEB & K's Motion for Summary Judgment). There is no evidence on this record that a court order was ever entered or that the parties ever reached a mutual agreement as to FEB & K's defense of itself, although FEB & K did submit copies of its

---

**3.** In Caplan I, subparagraph 1 of this provision was specifically enforced by the Third Circuit which found that it properly granted discretion to Vigilant to settle such suits as it deemed appropriate without FEB & K's consent. 68 F.3d at 836–837. In this case, it appears that we are being called upon to interpret both sub-paragraph 1 as it concerns the duty to defend and sub-paragraph 3 relating to the payment of defense expenses.

bills totaling $42,559.25 through November 8, 1996 to Vigilant for payment.[4] (Exhibits "Q"—"R;" "T–Z" to Affidavit of Helen Mandel Braverman in Support of FEB & K's Motion for Summary Judgment; Exhibit "A" to Vigilant Insurance Company's Memorandum of Law in Opposition to FEB & K's Motion for Summary Judgment).

By the plain and ordinary meaning of the insurance contract itself, in the absence of either a court order or mutual agreement, there can be no breach of contract. Consequently, we likewise can find no breach of the policy at issue by Vigilant's failure to pay FEB & K's invoices here.[5]

### C. FEB & K's Claim for Bad Faith Under 42 Pa.C.S. § 8371.

Under Count III of its cross-claim, FEB & K seeks damages against Vigilant for bad faith pursuant to 42 Pa.C.S. § 8371. That statute states:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

Although the statute itself does not define "bad faith," it has nevertheless acquired a peculiar and universally acknowledged meaning as follows:

> *Insurance.* 'Bad faith' on the part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e. good faith and fair dealing) through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Polselli v. Nationwide Mutual Fire Insurance Co.*, 23 F.3d 747, 751 (3rd Cir.1994), quoting *Black's Law Dictionary* 139 (6th ed.1990) and citing *Seeger by Seeger v. Allstate Insurance Co.*, 776 F.Supp. 986, 989 (M.D.Pa.1991) and *Coyne v. Allstate Insurance Co.*, 771 F.Supp. 673, 677 (E.D.Pa.1991); *Parasco v. Pacific Indemnity Co.*, 920 F.Supp. 647, 655 (E.D.Pa.1996). Although § 8371 provides an independent cause of action to an insured that is not dependent upon success on the merits or trial at all of an underlying claim, to recover under a claim of bad faith the plaintiff must show that the insurer did not have a reasonable basis for denying benefits under the policy and that it knew or had recklessly disregarded the lack of a reasonable basis for denying the claim. *Polselli v. Nationwide Mutual Fire Insurance Co.*, 126 F.3d 524 (3rd Cir.1997); *Horowitz v. Federal Kemper, supra,* 57 F.3d at

---

**4.** As the record and FEB & K's motion for summary judgment further reflect, FEB & K sought and continues to seek some $132,946.19 in counsel fees through August 13, 1997 for the purported continued "defense" of Caplan II, including its prosecution of its counterclaim against Maia Caplan and this cross-claim against Vigilant. As if its request for these attorneys' fees and costs were not affront enough, FEB & K also contends that it is entitled to interest on this amount at the prime rates of 8.25% and 8.50% plus 3% which figure should then be trebled for a total award of $25,420,130.68. As discussed above and *infra,* we find there is absolutely no basis upon which to grant such relief to FEB & K and we would take this opportunity to direct the principals of FEB & K in general and Helen Mandel Braverman in particular to Fed.R.Civ.P. 11 and to Rules 3.1 and 3.3 of the Pennsylvania Rules of Professional Conduct for what appears to be much needed guidance as to the prosecution of such

claims in the future. *See Also:* Local Rule of Civil Procedure 83.6(IV)(B).

**5.** Additionally, Exhibit "E" to Vigilant's Supplement to its Cross–Motion for Summary Judgment, Exhibits "E" through "J" to Vigilant's Memorandum of Law in Opposition to FEB & K's Motion for Summary Judgment and Exhibit "BB" to Helen Mandel Braverman's Affidavit in Support of FEB & K's Motion for Summary Judgment demonstrate that FEB & K has already been paid some $225,000 from the Hartford Insurance Company for the nearly identical legal work for which it has cross-claimed against Vigilant in this lawsuit. There is thus no evidence that FEB & K has suffered damages as a result of Vigilant's failure to pay its invoices and for this reason also, summary judgment shall be entered in favor of Vigilant.

307–308; *Nealy v. State Farm Mutual Automobile Insurance Co.,* —— Pa.Super. ——, 695 A.2d 790, 793 (1997). *See Also, Leo v. State Farm Mut. Auto.Ins. Co., supra,* 939 F.Supp. at 1190.

█ Applying these principles to this case, there again is no evidence that Vigilant denied FEB & K any benefits to which it was entitled under the subject policy. To reiterate, the record evidence evinces that Vigilant in fact settled Maia Caplan's claims on FEB & K's behalf and thereby fulfilled its contractual obligations. There is thus no basis upon which to make a finding of bad faith conduct on the part of the insurer and judgment as a matter of law shall therefore be entered in favor of Vigilant and against FEB & K on Count III of FEB & K's cross-claim.

### Conclusion

For all of the reasons set forth above, we now enter the attached order granting Vigilant Insurance Company's motion for summary judgment and denying the summary judgment motion of Fellheimer, Eichen, Braverman & Kaskey.

### ORDER

AND NOW, this day 30th of April, 1998, upon consideration of the Cross–Motions for Summary Judgment of Defendants Fellheimer, Eichen, Braverman & Kaskey and Vigilant Insurance Company on FEB & K's cross-claim against Vigilant, it is hereby ORDERED that the Motion of Vigilant Insurance Company is GRANTED and Judgment is hereby entered in favor of Vigilant Insurance Company and against Fellheimer, Eichen, Braverman & Kaskey on the law firm defendant's cross-claim in no amount.

IT IS FURTHER ORDERED that the Motion for Summary Judgment of Fellheimer, Eichen, Braverman & Kaskey on its cross-claim against Vigilant Insurance Company is DENIED.