## Auman v. Erie Insurance Co.

C.P. of Lebanon County, No. 2011-00922

*Edward J. Coyle*, for plaintiffs

*Stephen L. Banko*, for defendant Erie Insurance Company.

*Henry F. Canelo*, for defendant Consolidated Insurance Services, Inc.

TYLWALK, *P.J.*, Aug. 7, 2014—

1. Pursuant to Pa.R.C.P. No. 1035.2, a party may move for summary judgment when the evidentiary record reveals that the moving party is entitled to judgment as a matter of law.

2. Summary judgment may be granted only in cases where the right is clear and free from doubt. The moving

party has the burden of proving the nonexistence of any genuine issue of material fact. The court is required to view the record in the light most favorable to the nonmoving party and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

3. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment; rather, he must present depositions, affidavits, or other acceptable documents that show the existence of factual issues for the jury's consideration.

4. The court ruled that the plaintiffs had come forth with sufficient evidence to indicate the existence of factual disputes which precluded the entry of summary judgment on the count for breach of contract.

5. In order to establish a claim under the Unfair Trade Practices Law, a plaintiff must prove that the defendant was engaged in unfair methods of competition and unfair or deceptive acts or practices and that the transaction between the plaintiff and defendant constituted trade or commerce within the meaning of the Unfair Trade Practices Law.

6. The insurance industry is a trade or commerce within the coverage of the Unfair Trade Practices Law.

7. Under Pennsylvania law, only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the Unfair Trade Practices law.

8. An insurer may be held liable only if there are fraudulent misrepresentations in order to sell a policy or some other form of misfeasance; an insurer is not liable for a simple failure to perform, which amounts to nonfeasance.

9. The court stated that the essence of plaintiffs' claim is that defendant failed to perform its duty to update the coverage as construction costs increased over time and that this failure to perform constitutes nonfeasance, not malfeasance of defendant's alleged duties. Consequently, there is no cause of action under the Unfair trade Practices Law and the court granted summary judgment on this claim.

10. An expert witness is a witness who possesses knowledge not within ordinary reach or understanding, and who, because of this knowledge, is specially qualified to address a particular subject. An expert may offer an opinion on a subject which is so distinctly related to some science, profession, business or occupation, that it is beyond the understanding of the average layperson.

11. The primary purpose of expert testimony is to assist the trier of fact in understanding complicated matters. Necessity is fundamental to the admissibility of opinion evidence. If the facts can be fully and accurately described to the fact-finder, who, without special knowledge or training, is able to estimate the bearing of those facts on the issues in the case, then the opinions of witnesses are inadmissible because they are unnecessary in the search for truth.

12. Although the court agreed that there are many situations in which expert testimony is necessary to sustain a cause of action asserted by an insured against an insurance agent, it did not believe that this case is one since the issues are simply whether defendant agreed to keep the plaintiffs' coverage abreast with the rise in construction and other replacement costs and, if so, whether it was negligent for failing to do so. Consequently, the court denied defendant's motion for summary judgment on

plaintiffs' count for negligence.

## ORDER OF COURT

And now, this 7th day of August, 2014, upon consideration of the motion for summary judgment of Consolidated Insurance Services, Inc., it is hereby ordered that said motion is granted, in part, and denied, in part as follows:

1. The motion for summary judgment with regard to plaintiffs' claim for breach of contract in Count Two of the complaint is denied.

2. The motion for summary judgment with regard to plaintiffs' claim for violation of the Unfair Trade Practices and Consumer Protection Law in Count Five of the complaint is granted.

3. The motion for summary judgment with regard to plaintiffs' claim for negligence in Count Six of the complaint is denied.

Before us is the motion for summary judgment submitted by defendant Consolidated Insurance Services, Inc. ("consolidated"). The pleadings and the record provided by the parties reveal the following facts relevant to our resolution of this motion.

Plaintiffs William F. Auman, Jr. and Carole M. Auman ("the Aumans") purchased their home at 720 Kimmerlings Road, Lebanon in April 1978. At that time, they purchased a homeowner's insurance policy for the property from defendant Erie Insurance through a local insurance agent, Reist Insurance Agency ('Reist"). The Declaration Page of the policy states: "AUTOMATIC ADJUSTMENT OF COVERAGE WAS APPLIED TO DWLG" (Complaint, Exhibit "B") The policy also provides:

Right and duties — conditions — Section 1, paragraph (3) Automatic adjustment of coverage amounts

This policy provides you with a guard against the effect of inflation in construction costs.

We will keep track of costs and at the next policy period we will adjust the amount of your building coverage if necessary. Adjustments in other coverages (Other structures coverage and personal property coverage) will also be made proportionately. Your premium will be adjusted at each policy period to reflect any change in the amount of insurance.

During the policy period, if there is an increase in construction costs and a loss occurs, we will reflect the increase in the amount of insurance before making payment. There will be no charge for this additional coverage.

However, if for any reason other than inflation or construction costs, the amount of your insurance on your home becomes inadequate, or if you made substantial improvement to your home and failed to notify us to increase the amount of your insurance, the amount of insurance shown on the declarations will be the full amount available should a loss occur.

(Plaintiffs' brief in opposition to consolidated's motion for summary judgment, Exhibit "A" at p. 12) At the time of the fire, the declarations page of the policy indicated that the "amount of insurance" for the Aumans' dwelling was $150,500. (Complaint, Para. 21; plaintiffs' brief in opposition to consolidated's motion for summary judgment, Exhibit "A" at p. 12)

Consolidated's motion for summary judgment avers

consolidated came into existence when its owners purchased Reist in 1986. However, documents filed with the Pennsylvania Department of State, Bureau of Corporations, reflects that Reist's name had been changed to consolidated in 1984, two years earlier. The Aumans renewed the policy and paid their annual premiums through 2010. The complaint avers that the annual premiums increased during the years the policy was in effect.

The Aumans allege that on October 18, 2010, their home and personal property were severely damaged by fire. Erie determined that the loss was a covered event under the policy and an Erie Claims Adjuster, Deborah Enck, inspected the property in order to assess the damage and determine the value of the personal property which was lost. The post-fire estimate for replacement cost of the home was $201,816.81. However, Erie paid only $150,500 to the Aumans. The Aumans allege that they relied on the 1978 coverage evaluation and the coverage adjustment provision to ensure that they had adequate coverage but that consolidated failed to establish and adjust the replacement cost coverage to ensure full compensation in the event of a total loss and that they were left severely underinsured.

The Aumans brought this lawsuit alleging causes of action in breach of contract, violation of the unfair trade practices and consumer protection law and negligence against consolidated.[1] Consolidated has filed a motion for summary judgment, claiming that "consolidated had nothing to do with the writing of the policy, the interpretation of the policy, or any aspects of the amount of money paid out by Erie." (Motion for summary judgment, Para. 15) This motion is presently before us for resolution.

---

1. Counts Two, Five and Six, respectively.

Pursuant to Pa.R.C.P. No. 1035.2, a party may move for summary judgment when the evidentiary record reveals that the moving party is entitled to judgment as a matter of law:

Rule 1035.2. Motion

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. No. 1035.2. The note to Rule 1035.2 provides, in part that:

The evidentiary record may be one of two types. Under subparagraph (1), the record shows that the material facts are undisputed and, therefore, there is no issue to be submitted to a jury.

...

Under subparagraph (2), the record contains insufficient evidence of facts to make out a prima facie cause of action or defense and, therefore, there is no issue to be submitted to a jury. The motion in this instance is made

by a party who does not have the burden of proof at trial and who does not have access to the evidence to make a record which affirmatively supports the motion. To defeat this motion, the adverse party must come forth with evidence showing the existence of the facts essential to the cause of action or defense.

Pa.R.C.P. No. 1035.2 — Note.

Summary judgment may be granted only in cases where the right is clear and free from doubt. *Marks v. Tasman*, 589 A.2d 205 (Pa. 1991). The moving party has the burden of proving the nonexistence of any genuine issue of material fact. *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466 (Pa. 1979). The court is required to view the record in the light most favorable to the nonmoving party and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Davis v. Pennzoil*, 264 A.2d 597 (Pa. 1970).

Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment; rather, he must present depositions, affidavits, or other acceptable documents that show the existence of factual issues for the jury's consideration. *DeWeese v. Anchor Hocking Consumer and Indus. Products Group*, 628 A.2d 421, 427 Pa. Super. 47 (Pa. Super. 1993) With these general principles in mind, we now examine the defendant's specific contentions as to summary judgment.

### Count Five — Breach of Contract

The Aumans allege that they entered into a contract with Reist to obtain full replacement coverage for their home. They allege that consolidated owed them that obligation as it is, in essence, the same entity as Reist. They allege

that consolidated breached this contractual duty by:

(1.) failing to properly advise and provide them with the appropriate insurance benefits for their dwelling, personal property and other damages;

(2.) failing to keep track of building and construction costs and adjust the amount of the dwelling coverage; and

(3.) failing to review the Auman's dwelling coverage and adjust the amount of coverage accordingly.

(Complaint, Paras. 54-56).

Consolidated argues that the only contract in this matter was between the Aumans and Erie and that there is no evidence of a written or oral contract between the Aumans and consolidated. It argues that the only evidence that the Aumans can present in this regard is that Carole Auman recalls speaking with someone she believes was associated with consolidated, but is unable to recall the details, time, reason for, or substance of that conversation. Consolidated explains that it is likely that this conversation was with a representative of Reist, which was in business for eight years after the initial policy was issued, and that any other conversations were with an adjuster from Erie. Consolidated claims that it is entitled to the entry of summary judgment since there is insufficient evidence to establish the existence of a contract between the Aumans and itself.

The Aumans counter that consolidated has merely continued the same business which had formerly been conducted under the Reist name. In opposition to the motion, they have produced numerous Exhibits indicating that the business's name was changed to consolidated

in 1984, two years prior to the alleged sale. Exhibit "1" to plaintiffs' response to motion for summary judgment contains a "business entity filing history" submitted to the Pennsylvania Department of State. On that form, consolidated indicates its "entity creation date" as "9/15/78" (when the insurance agency was being operated under the Reist name). (Plaintiffs' response to motion for summary judgment, Exhibit "1") That form indicates the "current name" of the business as "Consolidated Insurance Services, Inc." (Plaintiffs' response to motion for summary judgment, Exhibit "1") Exhibit "1" also contains a copy of the articles of amendment — business, filed on June 29, 1984, and certified by the Pennsylvania Department of State, for "Consolidated Insurance Services, Inc." The application for amendment of articles which was submitted to the corporation bureau indicates that the corporate shareholders of "Miller-Reist Associates, Inc." had adopted a resolution to amend the name to "Consolidated Insurance Services, Inc." in 1984. (Plaintiffs' response to motion for summary judgment, Exhibit "1") The amendment of the corporate name was approved and evidenced by a certificate of amendment issued by the department of state on June 29, 1984. (Plaintiffs' response to motion for summary judgment, Exhibit "1")

The Aumans have also provided a copy of consolidated's response to the following Interrogatorries:

21. Commencing with the date of the policy's inception and October 18, 2010, did defendant, Consolidated Insurance Services, Inc. consider itself an agent of the plaintiffs or an agent of Erie Insurance Company, Erie Property & Casualty Company, Erie Insurance, Erie Insurance Group, and/or Erie Insurance Exchange?

RESPONSE: Objection. answering defendant is unable

to properly respond to this interrogatory as it is unclear what is meant by the term "agent." Without waiving said objection, when the policy was written in 1978 the agency was named Reist insurance agency. in 1986, Reist became Consolidated Insurance Services, Inc. Consolidated sells homeowners policies from various insurers along with Erie.

28. Did defendant or its representatives ever undertake to evaluate whether plaintiffs homeowners insurance coverage was sufficient to fully compensate plaintiffs in the event of a total loss? If so, state each such undertaking by identifying the date, manner of communication, and the name of the agency representative who performed such an evaluation.

RESPONSE: During their initial request for homeowners insurance.

(Plaintiffs' response to motion for summary judgment, Exhibit "3")

The Aumans contend that Consolidated (which was known as Reist at the time) was acting as an independent agent and/or broker[2] when the Aumans orally procured its services in 1978 and that Consolidated has acknowledged in its reeponse to Interrogatory No. 28 that it undertook the initial evaluation of the home in 1978 which was used to determine the initial level of coverage for the policy. They

---

2. The Aumans explain that "[i]n the insurance industry there are both captive insurance agents and independent insurance agents. Captive agents are agents that sell the products of only a single company. Independent agents are agents that typically sell the products of several different insurers. Consolidated Insurance Services, Inc., by its own admission of dealing with multiple insurers in its interrogatories (*see* Exhibit 3, consolidated's answer to plaintiffs' first set of interrogatories, Interrogatory Number 21), is not a captive agent but is instead an independent agent. (Plaintiffs' brief in opposition to consolidated's motion for summary judgment at p. 4).

view this as an admission on the part of Consolidated that it was the entity which existed in 1978 at the inception of the contractual relationship alleged to have existed between these parties. They explain that Consolidated, in its capacity as an independent agent (Consolidated's response to Interrogatory No. 21), entered a contractual relationship with the Aumans when it agreed to see that the Aumans were adequately covered for replacement value of their property. They argue that Reist's name change to Consolidated in 1984 and the alleged sale in 1986 did not create a new entity, and that Consolidated merely continued Reist's business, including the undertaking to see that the Aumans' policy provided sufficient coverage of their property.

We believe that the Aumans have come forth with sufficient evidence to indicate the existence of factual disputes which preclude the entry of summary judgment on the count for breach of contract. The parties do not differ as to the undertaking to obtain adequate replacement coverage in 1978, but do dispute whether that obligation continued throughout the duration of the policy renewals. Consolidated's Response to Interrogatory No. 28 indicates that it undertook the initial obligation in 1978, suggesting that it is the same entity. There is no evidence to suggest that Reist's business and undertakings were affected by its 1984 name change.

We believe that the question of whether Consolidated is a successor to Reist is a question of fact that will have to be decided at trial. It is unclear whether any responsibility, if it continued beyond the initial evaluation of the property, was assumed by the new owners of Consolidated until the time of the fire in 2010 as we have been given no information as to the terms of that transaction. Consolidated has provided no evidence that Reist ceased to exist in 1986 and that

it did not simply continue that business after the sale. Clearly, Consolidated continued some portion of the prior business as it renewed the Auman's policy and accepted premiums after 1986. Thus, we will deny Consolidated's request for summary judgment on this count.

### Violation of Unfair Trade Practices and Consumer Protection Law

In Count Five, the Aumans allege that Consolidated violated the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1 *et seq* ("Unfair Trade Practices Law") by:

(a) Engaging in fraudulent conduct which created the likelihood of confusion or misunderstanding on the part of the plaintiffs regarding the insurance benefits to which it was entitled — to wit, falsely assuring the plaintiffs that the coverage they provided would automatically adjust to ensure that they were fully covered;

(b) Engaging in deceit by misrepresenting the terms and condition of coverage to plaintiff;

(c) Failing to extend and pay for coverages provided for in the policy;

(d) Failing to properly keep track of construction costs and adjust the policy accordingly;

(e) Failing to make payment in full for losses that were insured by replacement value coverage;

(f) Failing to properly value and pay the replacement cost of the dwelling loss;

(g) Failing to properly value and pay the replacement

cost of the personal property loss;

(h) Failing to properly value and pay the debris removal coverage;

(i) Failing to properly value and pay the trees, shrubs, plants and lawns, replacement coverage;

(j) Advertising and promoting the benefits the its (sic) coverage adjustment feature to improperly induce plaintiffs into purchasing said coverage when Consolidated had no intention of providing reasonable benefits; ....

(Complaint, Para. 73 (a)-(j)

Consolidated claims that the evidence fails to demonstrate any violation of the Unfair Trade Practices Law on the part of Consolidated, as the record is devoid of any evidence of deceptive acts or practices. It argues that the only evidence in this regard which has been produced by the Aumans is the following:

(1) Mrs. Auman recalls speaking to a woman named Sheila at Consolidated but cannot recall the substance of any conversations, how often she spoke with the woman or when the conversations took place;

(2) Mr. Auman cannot recall ever speaking to anyone from Consolidated or having received any correspondence from Consolidated.

The Aumans argue that Consolidated has violated this law by failing to adhere to the duties of an independent insurance agent, which includes the failure to comply with its promise secure the adequate insurance coverage for the loss of the Aumans' home.

In order to establish a claim under the Unfair Trade

Practices Law, a plaintiff must prove (1) the defendant was engaged in unfair methods of competition and unfair or deceptive acts or practices, and (2) the transaction between the plaintiff and defendant constituted "trade or commerce" within the meaning of the Unfair Trade Practices Law. 73 P.S. §201-3. The following definitions, which are relevant to the allegations of the complaint, are provided in Section 201-2:

§ 201-2. Definitions

(3) "Trade" and "commerce" mean the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth.

(4) "Unfair methods of competition" and "unfair or deceptive acts or practices" mean any one or more of the following:

(xxi) Engaging in any ... fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 P.S. §201-2.

Clearly, the insurance industry is a "trade" or "commerce" within the coverage of this Law. However, we agree with Consolidated that the Aumans have failed to allege or produce any evidence of unfair competition or deceptive trade practices as defined by Section 201-2.

At the time of the fire, the policy clearly stated that the amount of coverage for the Aumans' home remained at $150,500, the same amount provided in 1978. (Complaint,

Para. 21) Thus, there was no representation that the coverage had been adjusted at any time.

Under Pennsylvania law, only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the Unfair Trade Practices law. *Caplan v. Fellheimer, Eichen, Braverman & Kaskey*, 5 F. Supp. 2d 299 (E.D.Pa. 1998). An insurer may be held liable only if there are fraudulent misrepresentations in order to sell a policy or some other form of misfeasance; an insurer is not liable for a simple failure to perform, which amounts to nonfeasance. *Aetna Cas. And Sur. Co. v. Ericksen*, 903 F. Supp. 836 (M.D.Pa. 1995). For example, an insurer's failure to fulfill its contractual duty to defend its insured was considered nonfeasance, rather than malfeasance, and was thus not actionable. *Caplan v. Fellheimer, Eichen, Braverman & Kaskey, supra.*

The Aumans have failed to produce any evidence to substantiate this cause of action. They allege that Consolidated undertook an obligation to see that their insurance policy provided adequate coverage for the replacement of their home in the event of a loss such as that which occurred in the fire. Their allegations fall short of any fraud involved in the sale of this policy. The essence of their claim is that Consolidated failed to perform its duty to update the coverage as construction costs increased over time. This failure to perform constitutes nonfeasance, not malfeasance of Consolidated's alleged duties. As such, there is no cause of action under the Unfair Trade Practices Law and we must grant summary judgment on this claim.

## Negligence

Consolidated argues that the Auman's negligence count should be dismissed, as the Aumans have failed to produce

expert evidence to support this claim. The Aumans first point to Consolidated's status as an independent agent and note the duty of an independent agent to their customers:

> ... it is the law that where an insurance agent or broker promises, or gives some affirmative assurance, that he will procure or renew a policy of insurance under such circumstances as to lull the 'insured' into the belief that such insurance has been effected, the law will impose upon the broker or agent the obligation to perform the duty which he has thus assumed.

> A plaintiff acquires a cause of action against his broker or agent where the broker 'neglects to procure insurance, or does not follow instructions, or if the policy is void or materially defective through the agent's fault....' The broker, in cases of default, is liable 'to the same extent as the insurer would have been liable had the insurance been properly effected....

(Plaintiffs brief in opposition to motion for summary judgment, citing *Al's Cafe, Inc. v. Sanders Ins. Agency*, 820 A.2d 745, 749 (Pa. Super. 2013). It is their position that no expert testimony is necessary to establish a breach of this duty. After careful consideration of this issue, we agree.

An expert witness is a witness who possesses knowledge not within ordinary reach or understanding, and who, because of this knowledge, is specially qualified to address a particular subject. *Bergman v. United Services Automobile Association*, 742 A.2d 1101 (Pa. Super. 1999). An expert may offer an opinion on a subject which is "so distinctly related to some science, profession, business or occupation, that it is beyond the understanding of the average layperson." *Id.* The primary purpose of expert

testimony is to assist the trier of fact in understanding complicated matters. *Id.* Necessity is fundamental to the admissibility of opinion evidence. *Id.* If the facts can be fully and accurately described to the fact-finder, who, without special knowledge or training, is able to estimate the bearing of those facts on the issues in the case, then the opinions of witnesses are inadmissible because they are unnecessary in the search for truth. *Id.*

Consolidated contends that a similar situation was before the trial court in *Randazzo v. National Penn Insurance Company*, 2011 Phila. Ct. Com. Pl. Lexis 363, *aff'd* 60 A.3d 848 (Pa. Super. 2012). In that case, the plaintiff sued insurers and two insurance agents alleging negligence and negligent misrepresentation for failing to ensure that his property was adequately covered and for failing to increase coverage to the amount plaintiff had requested. The agents moved for summary judgment on the basis that plaintiff had failed to produce expert evidence. In response, the plaintiff asserted that no expert opinion was necessary to support the claims. The trial court addressed this issue:

> Instantly, defendants are licensed insurance ... agents affiliated with the insurance companies. As such, defendants have a general duty to exercise the skill and knowledge normally possessed by members of the insurance profession and a failure to do so will render the company/agent liable for any loss of coverage....

> However, when either scientific, technical, or other specialized knowledge beyond that possessed by a lay person will assist the trier of fact of (sic) to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of

an opinion.... Plaintiff concedes that he does not have an expert who will testify on his behalf, but contends none is needed.

This motion judge disagrees and opines that the testimony of an expert is essential to aid the jury in understanding the complexities of the insurance practice and policies; and determining the facts in issue, the duty owed by defendants to plaintiff, the alleged breach of said duty, the adequacy of insurer's investigation of claim, and the actual loss incurred since the knowledge and assessment of these facts are beyond that possessed by laypersons.

...

In addressing whether expert testimony was required in a bad faith action against an insurer, the *Bergman* Court stated that although *insurance* is not so highly technical a field that the public cannot understand at least the general nature of an insurer's responsibilities, courts have held that expert testimony on the issue of an insurer's duty of care is necessary where a plaintiff questions the adequacy of an insurer's assessment of plaintiff's insurance needs.

Here, in his complaint, plaintiff alleges that defendants breached their duty by, *inter alia*, failing to use due care in investigating his insurance needs and failing to obtain the coverage that a reasonably prudent insurance agent would have obtained under the circumstances. This allegation alone requires expert testimony, which plaintiff has failed to engage. Further, when considering plaintiff's negligence claim, a fact-finder would be charged with the responsibility of comparing defendants' investigation of plaintiff's insurance needs

to that the assessment of the average insurance agent and insurance agency would have provided. Such an assessment is well beyond a layperson's knowledge. Where defendants' conduct is being judged by the acceptable insurance investigation standard/practices in the insurance industry, plaintiff must produce an expert to establish the required standard and the alleged deviation from said standard.

*Randazzo v. National Penn Insurance Co.*, *supra* at 7-11 (emphasis in original, citations omitted).

Although we agree that there are many situations in which expert testimony is necessary to sustain a cause of action asserted by an insured against an insurance agent, we do not believe that this case is one. It is true that the Aumans allege negligence on the part of Consolidated for its failure to abide by the obligation it allegedly undertook to assess the Auman's insurance needs and to see that they were adequately insured. In establishing this claim, the Aumans need not establish the standard practice of agents in the insurance industry in determining the needs of their clients and how Consolidated failed to comply with those standard practices. Instead, this is a case of malfeasance. Consolidated makes no claim that it took any action whatsoever in this regard, but instead claims that it had no duty to do so. We believe that expert testimony is unnecessary to educate the jury under these facts. The issues are simply whether Consolidated agreed to keep the Aumans' coverage abreast with rise in construction and other replacement costs and, if so, whether it was negligent for failing to do so.